Curtis B. DYER, Appellant,

v.

CALDCLEUGH & POWERS et al., Appellees.

No. 75.

Court of Civil Appeals of Texas.

Corpus Christi.

May 20, 1965.

Opinion After Filing of Remittitur
June 2, 1965.

Rehearing Denied June 29, 1965.

Milton Walton, of Bloch & Walton, Corpus Christi, for appellant.

William H. Keys, of Keys, Russell, Watson & Seaman, Corpus Christi, for appellees.

GREEN, Chief Justice.

Curtis B. Dyer, appellant, was plaintiff in a suit on a promissory note and defendant in a suit for damages based on alleged fraud and breach of contract arising out of the same transaction. Appellees R. E. Caldcleugh, Jr., Jack Powers and Maxine Gallagher, individually and as members of a partnership of Caldcleugh & Powers, and appellee William H. Cousins were defendants in the suit on the note, and, except for Cousins, were plaintiffs in the suit for damages. The two cases were consolidated and

tried by the court without a jury. The trial court found in favor of Dyer on the note against Caldcleugh, Jr., Powers and Gallagher, and against Dyer as to defendant Cousins. The trial court found against Dyer on the suit for damages in an amount in excess of the sum found to be due him on the note, and entered judgment against him for the difference. Dyer has appealed from all of such judgment except as awards him recovery on the promissory note.

At the request of appellant the trial court filed findings of fact and conclusions of law. It is the principal contention of appellant, as shown by his 65 points of error, that there was no evidence and insufficient evidence to support the court's findings of fraud and breach of contract by appellant, and his conclusions of resulting damages to appellees, and that such findings and conclusions were against the preponderance of the evidence, and that double recovery of damages was awarded.

On September 23, 1960, by written contract executed by Curtis B. Dyer as Seller and Jack Powers and Maxine Gallagher as Buyer, to become effective October 1, 1960, Seller sold and conveyed to Buyer the business known as Curtis Dyer, d/b/a Dyer Insurance Agency, a casualty and fire insurance agency, located in Corpus Christi, Texas, for a consideration of $17,000.00, of which $5,000.00 was paid in cash, and $12,-000.00 was evidenced by a note in that sum, signed by Powers, Gallagher and W. H. Cousins, dated October 1, 1960, and payable $500.00 per month. The first six payments of said note were duly paid as they accrued but no payment has been made since April, 1961.

As found by the trial court, on February 1, 1961, four months after the sale of the agency, the insurance business of Jack Powers and Maxine Gallagher was merged into a partnership styled Caldcleugh & Powers, consisting of Powers, Gallagher and Robert E. Caldcleugh, Jr., who had purchased into the firm. The trial court concluded that such partnership succeeded to the rights of the original buyers in the purchase agreement above referred to, and that Caldcleugh assumed liability, along with his partners, on the promissory note given as part payment. Neither party to this appeal has raised any point or objection to such finding and such conclusion of the court.

Appellees Caldcleugh, Powers and Gallagher, in the suit as consolidated, elected to stand on the contract and to sue for damages resulting to them through alleged fraud of appellant, and for additional damages accruing as the result of alleged breach of the contract by Dyer. That they were entitled to do so is well settled. The injured party in a contract based on fraud may, if he chooses, retain the benefits of the contract, confirm its validity, and still recover damages for the fraud by which he was induced to make it; or he may recoup any damages which he has sustained if the opposite party sues him for money due on the contract. Tips v. Barneburg, Tex. Civ.App., 11 S.W.2d 187, writ ref.; Andrews v. Powell, Tex.Civ.App., 242 S.W.2d 656, writ ref., n. r. e.; Carruth v. Allen, Tex.Civ.App., 368 S.W.2d 672, n. w. h.

### FRAUD

In his Conclusion of Law No. 4, based on the Findings of Fact, the trial court stated:

"Plaintiffs have been damaged in the sum of $5000.00 by reason of the fraudulent misrepresentations by Defendant and by reason of Defendant's intentional failure to disclose material facts. Plaintiffs are entitled to recover said amount from Defendant."

In all of the negotiations and discussions leading to the making of the sales contract, Dyer acted for himself, and Buyer was represented by W. H. Cousins, an insurance man of considerable experience in the sale and purchase of insurance agencies, who was recognized by appellees and the trial court as an expert on the subject. Buyer

personally took no part in these discussions or negotiations and relied entirely on Cousins' advice and recommendations. Such negotiations took place in September, 1960. Cousins was appellees' principal witness concerning such negotiations.

The fraudulent misrepresentations found by the court to have been made by Dyer to Cousins in the negotiations leading to the making of the purchase contract, all of which were found to be material and made with intent to induce appellees to enter into the contract, and relied upon by Cousins and appellees to their detriment, are as follows:

(1) That the yearly commissions arising from his insurance business were from $20,000.00 to $22,000.00 a year.

(2) That his company had a great deal of good will and good customer relations, though he knew that his business was declining because the policies were not renewing.

(3) That his relations were good with Holiday Inn, his largest single customer, with knowledge on Dyer's part that when the business was written for Holiday Inn it could have been at better rates, and that Holiday Inn was dissatisfied with the account, which fact was not disclosed to Cousins nor to appellees.

(4) That Dyer falsely represented to Cousins that only 5% of his premium business was handled on notes of clients through banks, with recourse against the business for payment of such premium notes.

The trial court further found as a basis for recovery of damages for fraud perpetrated on appellees by Dyer in the negotiations leading to the contract, intentional failure to disclose material facts as follows:

(1) Failure by Dyer to disclose that he had in his employ two solicitors, the court finding that "this information is material in determining the amount a purchaser would pay for an agency, since the greater the solicitations by the solicitors, the more

effect it would have on the value of the agency."

(2) That Exhibit No. 1, relied on by Cousins in advising the purchase of the agency and in signing the note, purported to be a statement of total volume and total income for three years to September 1, 1960, but that Dyer, in preparing same, had not included the volume and income for 1960, during which time the volume and income were rapidly declining.

(3) That Dyer failed and refused to tell Cousins that the earning of the insurance agency in 1959 had declined from 1958, and that the earnings in the first 9 months of 1960 were far below those of 1958 or 1959. That such information was material, because it would indicate that the agency was having trouble, or that Dyer had quit working, or that something was wrong with customer relations and good will. That Cousins would not have signed the note or recommended the purchase had these facts been disclosed.

Dyer filed objections and exceptions to the findings and conclusions of the trial court, and in due time the court filed additional findings that Dyer had earned commissions, in 1957, $29,664.00; in 1958, $32,276.86; and in 1959, $20,039.00.

Appellant's first 32 points of error are directed at the above original findings and conclusion of the trial court, and are to the effect that there was no evidence as well as insufficient evidence to support them, and that the findings of the trial court are contrary to the undisputed evidence and are clearly wrong. In addition, as to the fraud findings based on failure to disclose material facts, appellant contends that in the transactions leading to the making of the contract, Dyer and buyer's representative, Cousins, were acting at arm's-length, and that Dyer was not required to disclose such matters to Cousins, who could have learned them by use of reasonable diligence. Appellant further contends that the court's conclusion of law does not apply the proper measure of damages.

We agree with appellant that the award of damages based on the findings of fraud was improper, for reasons stated below:

At the beginning of these negotiations, Cousins asked Dyer to furnish him with a written statement of the three-year annual volume of business and three-year annual commission income of the agency. It was Cousins' reasoned opinion that a fair, reasonable purchase price for a going casualty insurance agency was a sum equal to approximately one or one and a quarter year's commission receipts. As a result of such request, Dyer gave Cousins an instrument introduced in evidence as Plaintiffs' Exhibit No. 1, being as follows:

---

Plaintiffs' Exhibit No. 1 (Vol. III–S/F, p. 627)

### DYER INSURANCE AGENCY

3001 LEOPARD STREET P.O. BOX 1172

CORPUS CHRISTI, TEXAS

ACTUAL DAILY INVENTORY AS OF SEPTEMBER 1, 1960

| AUTO PREMIUMS | CASUALTY LINES viz | FIRE & EC | |
|---|---|---|---|
| $35,070.72 | PPF, Marine, WC, M&C OL&T Bonds, etc $25,661.71 | Volume | Premiums |
| | | 1 year $455,650.00 | $ 3,055.99 |
| | | 3 year $1,124,338.00 | 16,666.64 |
| | | 5 year  1,297,050.00 | 42,899.22 |
| | | $2,877,038.00 | $62,621.85 |

| TOTAL PREMIUMS | | ALL LINES | |
|---|---|---|---|
| AUTO | $35,070.72 | 3 year volume | $429,152.56 |
| CASUALTY | 25,661.71 | 3 year comm. | 81,930.24 |
| FIRE | 62,621.85 | Annual net return | 11,000.00 |
| | $123,354.28 | | |

---

Although the trial court found that Exhibit No. 1 purported to be a statement of total volume and total income for the three years up to September 1, 1960, so as to include the period from January 1, 1960, to August 31, 1960, Cousins did not so construe the instrument, and the evidence does not support such finding. Cousins testified, both on direct and on cross-examination, that he considered the three-year volume of premium income and commission income shown in the lower right-hand corner of the instrument as being for the years 1957, 1958 and 1959, and that he had not asked for a statement of business for 1960. In this respect, we copy a portion of Cousins' testimony on direct examination as follows (page 219, Vol. II—S/F):

"Q. All right, what did that Exhibit 1 indicate to you, Mr. Cousins?

A. Well, as it is set up here he shows me in the lower right-hand corner that the three-year annual volume amounts to $429,152.56; the three-year commission amounts to $81,930.24; total premiums, for a year I assume, amount to $123,354.28.

Q. All right, was this Exhibit 1 drawn up at your request?

A. Yes.

Q. Did you ever get anything from Mr. Dyer other than Plaintiff's Exhibit 1?

A. No.

Q. Did you ever make a detailed or any investigation of his accounts receivable book, his general ledger book or his personal record book?

A. No.

Q. Did you ever thumb through them?

A. Not at this time. That was many months prior.

Q. What were the ones he showed you?

A. Yes, he made a flat statement they were available to look at, and I gave them a glancing examination."

(Page 221, Vol. II—S/F)

"Q. That Plaintiff's Exhibit 1, which you have heard was made at your request and given to you by Mr. Dyer, purportedly covers the business for what period?

A. A possible three-year period.

Q. That is to what date?

A. It is a little more than that because it shows actual daily inventory as of September 21, 1960. *I would assume that it was the three-year period prior to the year 1960.*

Q. *Did you so consider it at the time?*

A. *Yes.*"

(Page 493, Vol. III—S/F) On cross-examination:—

"Q. I believe your testimony has been you didn't ask for anything Mr. Dyer didn't give you in the way of records or information?

A. That's right."

\* \* \* \* \* \*

(Page 493 and 494, Vol. III—S/F)

"Q. Plaintiff's Exhibit 1, you are familiar with it?

A. Yes, sir.

Q. That is what he prepared for you?

A. Yes, sir.

Q. What did you ask him?

A. I asked him for three years previous, three years premiums and commission income.

Q. All right, you didn't ask for a breakdown as to it in policies?

A. No.

Q. Fire and—

A. I asked for a three-year average premium and commission income, and he took it upon himself to break a little further down than was necessary. I was primarily interested in the past three year average premium volume and what the commission income was.

Q. So the information that you were relying on, such information is that contained where, down here in the corner where it says, 'All lines,' average three-year volume, is that what you were—

A. That was primarily what I was interested in, yes, sir.

Q. And this other was voluntary?

A. Well, it was good information, yes, sir, but my main interest was in what he had done the previous three years in annual volume specifically, as well as annual commission."

(Page 504, Vol. III—S/F, lines 7 through 17)

"Q. Now, these figures that you say show and indicate that the business was a buy at $17,000.00 is the volume of three years, volume shows three-year average commission of $81,930.24?

A. Yes, sir.

Q. I believe we have ascertained before the trial that that figure of $429,152.56 actually reflects a three-year volume for '57, '58 and '59, but leaves out '60, haven't you ascertained that?

A. I think that that is correct, yes, that is the assumption that I went on."

As stated above, the trial court, in response to objections filed to his original findings of fact by Dyer, filed additional findings, wherein he specifically found that the amount of commissions earned by Dyer in 1957 was $29,664.00; in 1958, $32,276.86; and in 1959, $20,039.00, or a total for the three years of $81,979.56. These were the same years, according to Cousins' testimony, included in the three-year statement of commissions earned as stated in Exhibit One, and actually exceeded the amount therein represented by $49.32.

█ A careful reading of the lengthy statement of facts does not reflect any testimony that Dyer at any time represented to Cousins or to anyone else, that the commissions earned by his agency during the months of 1960 to September 1st were at a rate of $20,000.00 to $22,000.00 per year. It is true that the evidence shows that from 1958 to 1959 the business had fallen off, and that during 1960 to the date of the contract it had decreased even more. However, there is no evidence that Dyer made any false misrepresentations as to the 1960 business. Cousins testified definitely that he did not ask Dyer for the 1960 figures. Considering the trial court's additional findings and in view of Cousins' evidence on the matter, we feel that there is no basis in the evidence for the finding that Dyer *falsely* represented the yearly commissions arising from his insurance business to be from $20,000.00 to $22,000.00.

The trial court further based his conclusion that damages should be assessed against Dyer for fraud on his finding of false representation by Dyer to Cousins as to the good will and good customer relations of the agency with its customers, and particularly as to its largest client, Holiday Inn.

As to the Holiday Inn account, the evidence of both Dyer and Cousins shows that in order for Dyer originally to secure this business it was necessary that he purchase $5,000.00 stock in the corporation owning the inn. Before Dyer would sell the agency to appellees, he required that Cousins purchase this stock from him. In the negotiations between Dyer and Cousins, as shown by undisputed evidence, the possibility of this account being lost was taken into consideration to the extent that the price Cousins should pay Dyer for such stock was to be reduced by $1,000.00 in the event the business of Holiday Inn with the agency should be cancelled.

█ Other than much inadmissible hearsay testimony, together with evidence of some cancellation of policies after appellees took over the business, we find the evidence insufficient to justify a finding that Dyer made any statement as a positive fact, rather than as a personal opinion, as to his good will and customer relations. Nor do we find sufficient evidence to support a finding that any opinion or views expressed by him to Cousins were false, and knowingly false, to the extent that fraud was thereby committed.

██ We recognize the well-established rule of law that an affirmative false statement knowingly made as to a material fact believed and relied on by the other party to the extent of causing him to enter a contract to his detriment may justify recovery

of proper damages in fraud, and the fact that the truth could have been discovered by the exercise of reasonable care and diligence would not be a defense. Isenhower v. Bell, Tex.Sup.Ct., 365 S.W.2d 354; Schonrock v. Taylor, Tex.Civ.App., 212 S.W.2d 260, writ ref. We further realize that it is not unusual for a seller to "puff" what he is selling, that general commendations, commonly known as dealers' talk, exaggerated statements of value, and expressions of opinion about the business, do not amount to actionable misrepresentations where the parties deal at arm's-length and have equal means of information and are equally well qualified to judge the true facts. 25 Tex.Jur.2d, Fraud and Deceit, Sec. 47, pp. 689, et seq.; same volume, pp. 712, et seq.; Hawkins v. Campbell, Tex. Civ.App., 226 S.W.2d 891, writ ref., n. r. e.; Frankfurt v. Wilson, Tex.Civ.App., 353 S. W.2d 490, n. w. h.; Texas Osage Co-op. Royalty Pool v. Brown, Tex.Civ.App., 118 S.W.2d 944, writ ref.; Moore & Moore Drilling Company v. White, Tex.Civ.App., 345 S.W.2d 550, writ ref., n. r. e.

We feel that any representations Dyer is shown to have made to Cousins concerning the good will and good customer relations of his agency comes under the head of dealers talk, puffing, and expressions of opinion, and not actionable fraud.

■ We find no testimony in the statement of facts that at any time before the execution of the contract, Dyer made any statement to Cousins that 5%, or any other per cent, of his premium business was handled on notes of clients through banks. Cousins did not testify to this effect, and neither did Dyer or any other witness. As stated above, and as found by the trial court, all of the negotiations leading to the execution of the contract were between Dyer and Cousins, and none were had between Dyer and either Powers or Gallagher. We therefore hold that this finding of fact by the trial court that Dyer made such false and fraudulent statement to Cousins concerning the percentage of premium business handled by bank loans is not based on any evidence, and cannot support any award for damages due to fraud.

The remainder of the fact findings by the trial court on which his conclusion of fraud perpetrated by Dyer is based concern failure by Dyer to disclose certain facts to Cousins, and not actual misrepresentations of material facts. There can be no doubt but that these parties, in their negotiations leading to the sale and purchase of this insurance agency, were under no confidential relations to each other, but were dealing at arm's length.

"In an arm's-length transaction the defrauded party must exercise ordinary care for the protection of his own interests and is charged with knowledge of all facts which would have been discovered by a reasonable prudent person similarly situated. And a failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." Courseview Incorporated v. Phillips Petroleum Co., Tex. Sup.Ct., 312 S.W.2d 197, quoted with approval in Thigpen v. Locke, Tex. Sup.Ct., 363 S.W.2d 247, p. 251, in which case an instructed verdict against the party claiming fraud was upheld.

Cousins' own testimony reveals that, although Dyer offered him for study all of his books of account, records and files, he declined the offer, and made no investigation of such records. His testimony shows that he made no inquiry as to who was working for Dyer, or whether Dyer had any solicitors in his employ. It also discloses that he made no request for any information of Dyers' business or commission receipts in 1960. Dyer was not requested to break down by years the business done by him on the previous years, so as to show whether or not the business was on the decline. Cousins himself testified that he received every bit of information he asked for. Dyer did not refuse to tell

Cousins anything. He was under no legal obligation to volunteer such information. Moore & Moore Drilling Company v. White, Tex.Civ.App., 345 S.W.2d 550, writ ref., n.r.e.; Howard v. County of Nolan, Tex. Civ.App., 319 S.W.2d 947.

We have already shown by Cousins' testimony heretofore quoted that Exhibit One did not purport to be a statement of total volume and total income to and including September 1, 1960.

■ The trial court erred in basing any conclusion of fraud committed by Dyer on any findings concerning failure by Dyer to disclose certain material facts.

Since we have held that there is not sufficient evidence in the record to support the court's findings of fraud, it is not necessary that we discuss the remainder of appellant's points with reference to the feature of the appeal involving fraud. The court's award of $5,000.00 damages as a result of findings of fraud is set aside.

Cousins, who was a defendant in the suit on the note in issue, but was not a plaintiff in the damage suit, did set up fraud as a defense. The trial court found that he signed the note, but held that his defense of fraud was good, and found him not liable. In view of our conclusions as above set forth, we hold that the trial court erred in failing to render judgment against Cousins, jointly and severally with the other defendants, on the note.

### BREACH OF CONTRACT

Paragraph 4 of the contract in litigation reads as follows:

#### 4.

"The parties hereto agree that Fifteen Thousand Dollars ($15,000.00) of the total purchase price payable hereunder shall be allocated to the agreement of Seller, and he does hereby so agree, to not reestablish, reopen, or in any manner become interested, directly or indirectly, as a local or recording agent in the casualty insurance agency field within the County of Nueces, State of Texas, for a period of five (5) years from October 1, 1960. For a period of ninety (90) days from October 1, 1960, Seller covenants and agrees to make his services available to Buyer at reasonable times, and from time to time as Buyer deems necessary, for consultation with respect to matters pertaining to the prior operation of Dyer Insurance Agency. Buyer shall have the right, at Buyer's option, to use and continue to use the firm style of 'Dyer Insurance Agency' except that Buyers covenant and agree that, under no circumstances, will it be represented to any insurance company, insured, prospective insured, or any third party whatsoever that Curtis Dyer, Seller herein, had any financial interest in said agency business, and Buyers agree to hold said Curtis B. Dyer harmless and free from liability for any and all obligations and liabilities incurred by said agency subsequent to October 1, 1960, it being intended hereby that the good will attributable to Dyer Insurance Agency shall wholly inure to the Buyer's benefit and use, for a term of five (5) years, and during such term of five years no benefit of the good will of Dyer Insurance Agency shall inure back to Seller, Curtis B. Dyer. Should Seller deem it necessary to reenter any business trade or occupation involving the casualty insurance business in Nueces County, Texas, within five (5) years from October 1, 1960, he may do so provided, however, that prior to such reentry, and as a right to do so, Seller will give written notice of such decision to Buyer and, in addition, will pay to Buyer the sum of Twelve Thousand Dollars ($12,000.00) cash."

The trial court expressly found that Dyer did re-enter the casualty insurance with-

out giving any written notice to Buyer, and without paying Buyer $12,000.00 or any part thereof, and in his conclusions of law held that by doing so in Nueces County, Texas, within five years from October 1, 1960, Dyer breached the contract, and that by virtue of such breach appellees (except Cousins) had been injured in the sum of $12,000.00 and were entitled to recover said amount from Dyer.

Appellant, by his points of error 33–40 inclusive attacks this award of damages on the grounds that the fact findings on which it is based are not supported by any evidence, are contrary to the undisputed evidence, are clearly wrong, being made on insufficient evidence, that the provision for payment of $12,000.00 is a penalty provision and unenforceable, and that there was no finding that the covenant not to compete was reasonable. By his point No. 41, appellant asserts that the court erred in not sustaining his motion to strike the testimony of appellees' witness Shelton concerning a telephone conversation with a person who identified himself as Dyer, Shelton having depended entirely on the caller's word for his identification.

From January 1, 1961, through August, 1961, Dyer was agency manager for South Coast Insurance Company in Corpus Christi. Although he testified that he dealt only with life insurance, there is evidence that the salesmen under his direction sold package insurance policies which included casualty coverage. Dyer admitted that by keeping the general ledger book and the company account current book, he was provided with an expiration list of his old agency—a list of the policies and the dates they were expiring, and the trial court expressly found that Dyer used such expirations to obtain new business for his life insurance business and to benefit himself, and that he offered expirations belonging to plaintiffs to other casualty agents. Though this was disputed by appellant, we find evidence in the record in support of such finding. Dyer, after the sale, had a

part in placing an advertisement in a Corpus Christi newspaper, using his picture, and stating that South Coast Life Insurance Company, of which he had been named agency manager, would handle a new package plan combining general and life insurance. The trial court, on sufficient evidence, expressly found that this included casualty insurance. After surrendering his recording agents license to the State Board of Insurance on insistence of attorney for Buyer in February, 1961, he applied for a renewal thereof in April, 1961, falsely stating that Dyer Insurance Agency was still in existence. Although Dyer testified that he turned over to Buyer over $17,000.00 of commission policy business, the trial court found, on sufficient evidence, that the purchasers received during their first year of business only $4,441.00 commission income, although according to the testimony and the court's finding, the new owners should have lost only about 15% of the purchased business. The trial court attributed this largely to appellant's holding himself out to be in the casualty business, offering to others in the casualty business expiration theretofore belonging to the Dyer Agency but sold to Buyer, and speaking disparagingly of the new firm, thus violating his covenant concerning the transfer of the good will of the agency to Buyer.

■■ We should uphold the trial court's findings unless they are manifestly erroneous, and not supported by any evidence of probative force, or are so against the weight and preponderance of the evidence as to be manifestly wrong. Bavousett v. Bradshaw, Tex.Civ.App., 332 S.W.2d 155, writ ref., n.r.e. It is our opinion from a careful reading of the statement of facts that there is evidence to support the finding of the court that Dyer did re-enter the casualty insurance field in Nueces County, Texas, within five years from October 1, 1960, without paying to Buyer the sum of $12,-000.00, and that such finding was not contrary to the weight of the evidence.

In reaching this view, we have not considered the testimony of the witness William J. Shelton concerning the telephone conversation with someone who identified himself as Curtis B. Dyer. Shelton was not able to identify Dyer as the caller, was not familiar with the voice, and only assumed the caller to be Dyer because the caller stated so. Appellant's motion to strike the testimony should have been sustained. Texas Candy & Nut Co. v. Horton, Tex.Civ.App., 235 S.W.2d 518, writ ref., n.r.e. However, this being a trial before the court without a jury, and there being other evidence to sustain the court's findings, we do not believe the court's ruling to be reversible error. Waxler v. Klingemann, Tex.Civ.App., 272 S.W.2d 746, writ ref.

The trial court determined that as a result of this breach by Dyer of the contract, plaintiffs had been injured in the sum of $12,000.00 and were entitled to recover said amount from Dyer. Regardless of whether this be considered a finding of liquidated damages under the contract, or as damages shown to have been actually sustained, we feel that it is fully justified by the evidence, and should be sustained. Rucker v. Campbell, 35 Tex.Civ.App. 178, 79 S.W. 627, writ ref.; Orenbaum Bros. v. Sowell Bros., Tex.Civ.App., 153 S.W. 905, writ ref.; Miller v. Chicago Portrait Co., Tex.Civ.App., 195 S.W. 619, writ ref.

In addition to the above, the court expressly found that Dyer breached (1) the provision of the contract wherein it was represented that the good will attributable to Dyer Insurance Agency should wholly inure to the Buyers' benefit, and failed to convey and assign same to plaintiff, and (2) the provision requiring him to make his services available to buyers at reasonable times, and from time to time, as Buyers deemed necessary, for consultation with reference to matters pertaining to the prior operation of the agency, and (3) the third paragraph of the contract by failing to deliver to Buyer the records, books and manuals of his business, together with such other written memoranda as may be pertinent to the agency and its business. The court concluded that the plaintiffs in the suit for damages had been damaged by the above breaches in the sum of $10,000.00 and allowed recovery against Dyer in that additional amount. The portion of the third paragraph of the contract referred to reads:

"On October 1, 1960, Seller agrees to deliver to Buyer the records, books, manuals of his business, together with such other written memoranda as may be pertinent to the agency and its business, and including stationery and printed matter bearing the style of 'Dyer Insurance Agency' ; but excluded shall be all office equipment, furniture, and furnishings of 'Dyer Insurance Agency'."

Appellant's points nos. 42–55 inclusive are directed at such findings and conclusion, and at the award of $10,000.00 damages, on the grounds of no evidence, insufficient evidence, contrary to the undisputed evidence, and that the award allows double recovery.

The provisions of the contract found to have been breached in (1) and (2) above are contained in the same paragraph 4 as in the agreement not to enter into a competitive business in Nueces County for five years and in our opinion all are a part of the same specific covenant.

"It is thoroughly established by all the authorities that a person may purchase the business of another, for the purpose of removing competition, with an agreement on the part of the seller, not to carry on a similar business in a given territory for a limited period of time. Covenants of this nature are designed to enable the buyer to obtain the full value of the good will which he has paid for as a part of the consideration of his purchase. * * *

"The purpose of such covenant was to render effective the good will which appellant, under the contract, was buy-

ing and paying for. When such a covenant has been made, any conduct on the part of the seller of the good will, reasonably calculated to impair its advantages, clearly constitutes a breach of the promise that the seller will not disturb the purchaser in the full enjoyment of his purchase." Foxworth-Galbraith Lumber Co. v. Turner, 121 Tex. 177, 46 S.W.2d 663, p. 664.

We seriously doubt that the evidence is sufficient to sustain finding (2) above. But regardless of that, we feel that any additional award of damages for breaching the provision of the contract concerning good will of the agency, and the provision as to being of assistance to the Buyer for 90 days, would to some extent, not determinable by us, duplicate the award upheld by us for re-entering the casualty insurance business, and thus would allow a double recovery. In fact, the trial court's finding of fact, on the basis of which in part he made this award of $10,000.00 damages, reads:

> "Because Defendant (for his own benefit) held himself out to be in the casualty insurance business, offered to others in the casualty insurance business expiration theretofore belonging to Dyer Insurance Agency and which should have become the property of Plaintiff under the aforementioned agreement, and has stated that Plaintiff would not be successful in the general insurance business, Defendant has not fulfilled his covenant that the good will of Dyer Insurance Agency should enure wholly to Plaintiff's benefit and has failed to assign and convey the good will of the agency to Plaintiff."

These are some of the same actions of Dyer that the trial court and we have used to justify the $12,000.00 award of damages above.

The finding that Dyer breached the portion of the third paragraph of the contract quoted above, and the inclusion of such breach in the award of $10,000.00

damages, is not warranted by the evidence. The testimony of appellee Powers was that he went to Dyer's office on October 1, 1960, to get the books and record and manuals mentioned in the contract, and got some records from Dyer. Some of the records, manuals, etc., were not pointed out by Dyer, and Powers did not get them. He never went back for any more, and according to his testimony, never asked for any records he did not get.

But even if the finding that Dyer breached this portion of the contract were based on sufficient evidence, it is not possible to determine what portion of the court's award was made for such breach.

We hold that this award made by the Court of $10,000.00 damages was improper for the reasons stated.

Paragraph 3 of the court's conclusions of law, which follows the paragraphs determining damages as already discussed herein, reads:

> "By reason of the breaches (heretofore set forth) on the part of Defendant of the purchase agreement of September 23, 1960, I find that Plaintiffs have suffered lost profits in the amount of $5,000.00, which they are entitled to recover from Defendant."

Dyer's breaches of the contract "heretofore set forth" were (1) by re-entering the casualty insurance business in Nueces County within five years from October 1, 1960; (2) by failure to comply with the requirement of the contract concerning the good will of the insurance agency; (3) breach of the contract provision copied above concerning making his services available to Buyer; and (4) breach of the provision copied above with reference to delivery of certain records, books and manuals.

As to (1) above, we have upheld the trial court's award of $12,000.00 damages for such breach. The court, in assessing this amount, did not exclude the item of lost profits, but expressly stated that "by reason of said breach on the part of De-

fendant, Plaintiff has been injured in the sum of $12,000.00, and is entitled to recover said sum from Defendant."

■ We have held that breaches (2) and (3) were actually a part of breach (1), and that damages awarded separately from the damages awarded for breach (1) constituted double recovery. Lost profits are often included within the term damages as illustrated by the frequent use of one word for the other in Pace Corporation v. Jackson, 155 Tex. 179, 284 S.W.2d 340. Recovery having already been had for damages which did not exclude lost profits for such breaches, should not be again repeated under the name of lost profits for the same breaches.

Furthermore, the evidence relied upon by the trial court and appellees with reference to lost profits was too uncertain and speculative, and the profits which might have been made from this practically new business of Buyer were not shown by any proof to that degree of certainty which the law requires. Southwest Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Wade v. Southwestern Bell Telephone Company, Tex.Civ.App., 352 S.W.2d 460, n. w. h.

As to breach (4), to conserve time we repeat what was stated above about the court's finding on this matter.

The trial court having found damages in favor of appellees Caldcleugh, Powers and Gallagher against Dyer, in the total sum of $32,000.00, being $5,000.00 fraud and the separate sums of $12,000.00, $10,000.00 and $5,000.00, for breach of contract, and that Caldcleugh, Powers and Gallagher owed Dyer $9,000.00 principal, plus interest and attorney fees on the note, or a total of $11,713.51, it deducted this latter sum from the total damages, and rendered judgment for the above mentioned appellees against Dyer for $20,286.49. A take-nothing judgment was entered as to appellee Cousins on the note.

Although appellees Caldcleugh, Powers and Gallagher have filed no cross-appeal from the judgment against them on the promissory note, if the judgment is to be reversed and remanded as to all other features of the case, we feel that the cause of justice requires that we reverse and remand the entire cause.

We have found this judgment to be excessive in the sum of $20,000.00. Appellees' counsel during oral argument suggested that in the event we did hold the recovery granted to be excessive, we grant him an opportunity to accept a remittitur, as provided in Rule 440, Texas Rules of Civil Procedure. In the event appellees file a remittitur of such excess within ten days of the announcement of this opinion with their statement that they accept and assume the liability of Cousins on the note so that the amount of the judgment on the note may be deducted from the award of $12,000.00 to plaintiff-appellees, this Court will reform and affirm the judgment in accordance therewith. Otherwise, the judgment is reversed, and the cause remanded in its entirety.

### OPINION AFTER FILING OF REMITTITUR

Plaintiff-appellees R. E. Caldcleugh, Jr., Jack Powers and Maxine Gallagher, through their attorneys of record, have filed a remittitur to the extent and in the amount of $20,000.00, and have accepted and assumed the liability of appellee Cousins upon the note in litigation, all as authorized in our original opinion. In view thereof, and of the rulings as heretofore announced by this Court, the amount of the judgment granted by the trial court in favor of said plaintiff-appellees against appellant Dyer is reduced by the sum of $20,000.00, so that said judgment shall provide for recovery by said plaintiff-appellees against appellant-defendant Dyer in the sum of $286.49, with interest at the rate of 6 per cent per annum from the date said decree was entered in the trial court. The costs as assessed in the judgment to and including

the trial shall remain as charged in the decree. All costs of appeal shall be assessed against the parties equally, one-half to appellant, and one-half to appellees.

As so reformed, the judgment is affirmed.

Motion for rehearing may be filed by either party within fifteen days after the date this order is announced.