**Gene SCHAEFFER, Appellant,**

v.

**Carl W. DURHAM et al., Appellees.**

**No. 787.**

Court of Civil Appeals of Texas,
Corpus Christi.

Oct. 31, 1973.

Rehearing Denied Nov. 30, 1973.

San Miguel, Porter, Madalinski, Mayo &
Lee, William M. Porter, San Antonio, for
appellant.

Max L. Bennett, Corpus Christi, for ap-
pellees.

## OPINION

YOUNG, Justice.

This is a suit for commissions on sales
of business school courses. Gene Schaef-
fer brought suit against Carl W. Durham,
individually; Durham Business College of
Corpus Christi, Texas, Inc.; Durham Busi-
ness College of San Antonio, Texas, Inc.;
and Durham Business College of Phoenix,
Arizona, Inc., requesting payment of
$12,322.19 for commissions owed for re-
cruiting students and moving expenses and

for $3,500.00 for attorney's fees. Defendants answered by denial of plaintiff's claims and by cross-action requested $1,500.00 of plaintiff for breach of covenant not to compete.

The trial was before the court without a jury. On findings of fact and conclusions of law the trial court rendered judgment that all parties take nothing. From that judgment only the plaintiff appeals.

Defendant-appellee Carl W. Durham operated several business colleges, each of which was a separate corporate entity, from his headquarters at Lexington, Texas. Students were recruited for all of the colleges by a number of business course salesmen, which group varied in number from 35 to 45. Duties of each salesman (sometimes called registrar) entailed solicitation of prospective students for the Durham College; enrollment of students in accordance with the school policies; presence at the school at necessary times to assist his recruited students with problems of enrollment, financial arrangements, and living accommodations; aid to the school in collecting accounts due by students; and assistance to students in gaining employment while in school and after graduation. Plaintiff-appellant Schaeffer began employment as a salesman in April 1967 for the Corpus Christi school. Later he transferred to the Phoenix school. Thereafter, he was employed at the San Antonio school, where subsequently he terminated in December 1969. At the outset of Schaeffer's employment in Corpus Christi a written contract was initiated which provided for, among other things, his commission rates; his reserve fund of $250.00 to be applied pro-rata against student nonpayment of tuition, refunds and books; and covenant not to compete. Schaeffer signed the contract. But Durham never did so in that he disagreed with the commission rates that were written in. The parties each thought that the commission rate matter had been agreed on orally. At any rate Schaeffer began work.

The method of handling accounts between the headquarters at Lexington, Texas, and the salesmen at the schools was as follows: Each day each school mailed in a journal sheet containing a list of student enrollments with copies attached of enrollment contracts each salesman had made with each student he had enrolled. On the 15th and 31st of each month the headquarters staff mailed a "Registrar's Remuneration Record" to each school for each salesman with his check for commissions attached. Each salesman certified as to its correctness and received his check. The remuneration document was then mailed back to headquarters for record purposes and correction of any discrepancies noted thereon by the salesman involved. The correction of discrepancies that appeared were then reflected in the next or the end of the month remuneration document and check to the salesman claiming error. The last remuneration document for Schaeffer, which was for the pay period of December 15, 1969 to December 31, 1969, showed he owed the various schools a total of $481.00. Schaeffer disagreed with this unfavorable balance and filed suit in March 1970.

■ On appeal Schaeffer contends that he has never received commissions for some students he recruited and that his commissions should have been calculated at 30% instead of 20% on some of his other students. The trial court filed findings of fact and conclusions of law. No objection was made or exceptions taken to such findings of fact. It is our duty to uphold the findings of the trial court unless the findings are manifestly erroneous and not supported by any evidence of probative force, or are so against the weight and preponderance of the evidence as to be manifestly wrong. Dyer v. Caldcleugh & Powers, 392 S.W.2d 523 (Tex.Civ.App.—Corpus Christi 1965, n. r. e.); Bavousett v. Bradshaw, 332 S.W.2d 155 (Tex.Civ.App.—Amarillo 1959, n. r. e.).

■ The trial court found that on a twice monthly basis, during the 30 months

period of Schaeffer's employment with the Durham Schools, Schaeffer signed "Registrar's Remuneration Records" which correctly set out the amounts of his commissions and reserve account accruing in the preceding interval; and that above Schaeffer's signature on each of the remuneration sheets signed by him appeared the statement "Received and Accepted; Certified Just and Correct". We have examined the record and find that there is testimony from Carl W. Durham (one of the appellees), Mrs. Marjorie H. Paschal (chief of the bookkeeping staff at the headquarters in Lexington) and Schaeffer (the appellant) to support each of these findings of the trial court. From these findings of the trial court we conclude that Schaeffer's signing the remuneration documents and acceptance of payment based on those documents preclude his claim for higher commissions and commissions on students not there shown. We hold that the many signed remuneration documents constitute written modifications of the employment agreement between the parties. Adams v. Can-Dee Oil Corporation, 357 S. W.2d 808 (Tex.Civ.App.—Waco 1962, n. r. e.).

Next, the appellant contends that he is entitled to at least the amount of $1,134.41 which was posted to his account during the period from after his termination of employment to the time of trial. In that regard, Mrs. Paschal, the appellees' chief bookkeeper, explained that often students enrolled paid for their courses on an installment basis. In this situation the salesman would receive his commissions proportionately as the student systematically paid the installments as they became due. Comprising the $1,134.41 amount were mostly postings of these installment payments made by students after Schaeffer's termination of employment. The students making these installment payments had been recruited by Schaeffer before his termination. Thus Schaeffer claims commissions on these installment payments by students he had recruited.

 Durham testified that he never agreed to continue to pay Schaeffer commissions after his termination and Schaeffer testified that he was never told he would continue to receive commissions after termination. Further, before beginning his employment, Schaeffer signed an instrument entitled "Specific Duties & Requirements of the Registrar" which contained the following language:

> " . . . I understand that in the event I choose to leave the employment of Durham Colleges or if they elect to dismiss me, I will have no further claim for potential commission or bonus against the Durham Colleges as I will not as of that date be servicing the student or the school."

We hold there was sufficient evidence, as demonstrated by the foregoing, to support the trial court's finding that Schaeffer was not entitled to the $1,134.41 he claimed. All of appellant's points of error are overruled.

The judgment of the trial court is affirmed.