Clara CRISP et al., Appellants,

v.

Willie PARKER et al., Appellees.

No. 12176.

Court of Civil Appeals of Texas,
Austin.

Nov. 13, 1974.

W. K. McClain, McClain, Stump & Wright, Georgetown, for appellants.

William S. Lott, Georgetown, for appellees.

SHANNON, Justice.

This appeal concerns an effort by co-tenants, appellants Clara Crisp and Willie Jefferson, to establish title by limitation to land as against other co-tenants. The district court of Williamson County entered a judgment contrary to appellants' claim of limitation title. We will affirm that judgment.

The Urban Renewal Agency of the City of Georgetown filed a petition in the district court to condemn the land in controversy, a lot located in west Georgetown, for the purpose of clearing that lot for "redevelopment and re-use" by that Agency. In that suit, two of the defendants, appellants here, filed a cross-action against the balance of the defendants, appellees here, all being relatives of either Vira Maxwell or Lucinda Smith.[1] By their cross-action appellants claimed that they were entitled to all proceeds to be awarded in the condemnation proceeding. This was so, appellants avowed, because they owned an undivided one-fourth interest in the lot and had acquired title to the balance of those interests as against appellees, their co-tenants, by authority of the three, ten, and twenty-five year statutes of limitation. Vernon's Tex.Rev.Civ.Stat.Ann. arts. 5507, 5510, and 5519.

The cross-action, including the claims of the respective parties to the damages to be awarded in the condemnation proceeding, was severed from the original condemnation suit. Judgment was entered in the original suit condemning the lot and requiring the Urban Renewal Agency to pay the sum of $6,000.00 into the registry of the court. Upon trial to the court, judgment was entered in the severed suit, contrary to appellants' claim of title by limitation.

By two points of error appellants contend that the court erred in finding that the law and facts were contrary to their claim of title by virtue of the ten and twenty-five year statutes of limitation. These points will be overruled.

The lot in controversy was deeded in 1930 by Archie Parker and wife to Lucinda Shanks for life with remainder to Vira Maxwell and Lucinda Smith. After that time Lucinda Shanks lived in the old house situated on that lot. During the lifetime of Lucinda Shanks, appellant, Clara Crisp, and her husband, Willie (Sanko) Crisp, moved into this house with Lucinda. Sanko was the son of the remainderman, Lucinda Smith. Lucinda Shanks died in 1932, and after her death Clara and Sanko remained in the house where they reared ten children.

Vira Maxwell lived in Georgetown only a short distance from Clara and Sanko. Sanko's mother, Lucinda Smith, did not live in Williamson County. Some of the witnesses testified that Vira permitted Clara and Sanko to continue living in the house because she was fond of her relative, Sanko, and that, after all, he and his large family needed a place "to stay." Witness Willie Parker testified that Sanko was allowed to remain in the house not only because he had no house but also because Sanko " . . . wouldn't get out to try to get no house to put his family in." Though Sanko had died, Clara was still living in the house at the time the Urban Renewal Agency began the proceedings to condemn the lot.

Vira died in 1965. Lucinda Smith died some time before 1968. Through the years and before those deaths, Clara and Sanko

1. Willie Parker, Sam Parker, Albert Parker, Rubenia Parker Smith, Honley Jefferson, Susie Jefferson Hunt, Bessie Jefferson Williams, Lillian Satterfield, Mellownie Johnson, Henry Jefferson, Jennie Daniels, Wofford Jefferson, Jr., John L. Jefferson and Willie Jefferson.

placed some improvements on the lot. The house previously had "a half a front fence," and Clara and Sanko "added the other half to it." They also added two rooms to the "big" house. In the 1930's they built an additional two-room house on a corner of the lot, where their daughter, appellant Willie Jefferson, lived. Some improvements were made to that house in 1948. In 1959 or 1960, a small garage was built on the lot. The testimony was conflicting as to whether Sanko or his half-brother, George Parker, built the garage.

The property was rendered in the name of the Lucinda Shanks Estate late in the 1960's when the property was rendered in the name of Willie Crisp. Clara testified that Sanko paid the county, city, and school taxes before his death and that afterward she "taken to paying them." She said that she would fall behind in the payment of the taxes but then she " . . . would pay more, you see, catching them up." An inspection of the tax records made exhibits in the statement of facts shows that the school taxes were not paid from 1956 to 1972, and that the city taxes were not paid from 1948 to 1972 with the exception of the years 1955, 1967, 1968, 1969, and 1970.

Clara testified that neither she nor Sanko, to her knowledge, had told Vira Maxwell or Lucinda Smith that they were claiming the property. In fact, on cross-examination Clara stated that she was *not* claiming the property against Vira. Mattie Gaines who had lived in Georgetown for eighty-nine years and who was well acquainted in west Georgetown, testified that she had never heard from anyone that Sanko or Clara were claiming the property.

The disposition of appellants' first two points of error is controlled by the application of the principles stated in Todd v. Bruner, 365 S.W.2d 155 (Tex. 1963), to the facts in this appeal. Justice Norvell wrote in that opinion:

"For respondent's case to stand, notice of repudiation must have been brought

home to petitioners or their predecessors in title prior to December 1, 1943 . . .

\*   \*   \*   \*   \*   \*

"Insofar as the true owner of property is concerned, there is a vast difference between the notice of adverse claim conveyed by the presence of a stranger in possession and that of a cotenant in possession. It is not unusual for one cotenant to have exclusive possession and make beneficial use of lands for rather long periods of time and ordinarily such use is with the acquiescence of the other cotenants. Cotenancy is a common form of land tenure when owners belong to the same family. This results largely by the operation of the statute of descent and distribution and commonly followed customs and practices relating to the making of devises of lands. The legal presumption follows a generally recognized habit or practice based upon years of observed experience. The statutes of limitation are statutes of repose. They are intended to settle and support land titles and are not designed to afford a method whereby one member of a family may appropriate property belonging to his kinsman. Hence the legal requirement that notice of repudiation of the common title should be clear, unequivocal and unmistakable. . . . Cotenancy-limitation situations often present the somewhat anomalous argument in which one cotenant in effect says, 'Although I lived within a few miles of my cotenant, I never told him of my repudiation of our common title, but my actions with reference to the land itself were so unequivocal and notorious that he must have known of the repudiation that I never disclosed to him.' The real property statutes of limitations as to cotenants are not designed to run in secrecy and silence . . .

\*   \*   \*   \*   \*   \*

"Any cotenant has a right to be in the possession of property in which he owns an interest, hence if the acts of the re-

spondents and their predecessors in title are susceptible of explanation consistent with the existence of the common title then such acts cannot be such as to give constructive notice to the cotenants out of possession. . . .

\* \* \* \* \* \*

"Possession, coupled with payment of taxes, is not notice to a cotenant of a repudiation of the common title. . . ."

Moreover, whether or not the possession by appellants amounted to adverse possession as to appellees or their predecessors in title is a question of fact. The court found contrary to appellants on their claim of adverse possession and title by limitation, and such finding is supported by the evidence.

By their points of error three and four appellants complain that the finding of the trial court that they were entitled to $250.-00 for the improvement placed upon the property is supported by no evidence, or alternatively, is so clearly against the overwhelming weight of the evidence so as to be clearly and manifestly wrong.

In a nonjury case the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. Where there is evidence of probative force to support the findings and judgment of the trial court, such findings will not be disturbed, even though the evidence is conflicting and the reviewing court might have concluded otherwise. Corn v. First Texas Joint Stock Land Bank, 131 S.W.2d 752 (Tex.Civ.App.1939, writ ref'd). We are of the opinion that there was evidence of probative force to support the trial court's judgment.

The main improvement which the appellants caused to be placed on the property, was the structure termed in the evidence as the "small" house built in the 1930's and improved in 1948. That house contained about six hundred and thirteen square feet, and was built of lumber. Unlike the "big" house, the "small" house had indoor plumbing. Mrs. Jo Wiltzius, the Supervisor of Real Estate Activities, Acquisition and Disposition of the Urban Renewal Agency of the City of Georgetown testified that in her opinion the "small" house had a value of $2,300.00. Mrs. Wiltzius, on cross-examination, admitted that she was not an appraiser, and that her allocation of the sum of $2,300.00 to the "small" house was for "relocation purposes" of the Urban Renewal Agency. In this connection it seems that the amount allocated to the existing structure on the condemned property relates to the relocation grant given by the Agency under federal law to the "owner-occupant." Mrs. Wiltzius admitted that the "small" house was sub-standard in the view of the Urban Renewal Agency and that it was dilapidated and virtually depreciated out. She also stated that since the land was "to be developed" the improvements were more of a detriment than an asset, and would have to be demolished. Mrs. Wiltzius testified further that from the standpoint of the Urban Renewal Agency the "small" house had a value of perhaps $100.00 because it had "sinks and plumbing." Mrs. Wiltzius concluded further in response to cross-examination that the only reason that she had testified that the improvements had some value was because people were living in those improvements.

Appellants also called Charles "Bud", Stockton, one of the special commissioners appointed by the court to appraise the property, to establish the value of the "small" house. Although Mr. Stockton did not go inside either house, and only drove by the property, he was of a mind that the "small" house was worth a "trickle" more than the "big" house. On cross-examination he admitted he did not think that there was any "salvage wood" in either house and that perhaps someone would have to be hired to demolish the houses. In Mr. Stockton's opinion the "big" house and the "small" house were among the worst houses in the Ridge section of west Georgetown.

**14**

The plaint of appellants' fifth point of error concerns the admission of evidence about benefits to which appellants might have been entitled under the "relocation plan" of the Urban Renewal Agency. Over appellants' objection, the court permitted Mrs. Frances Carlson, the Relocation Supervisor of the Urban Renewal Agency, to testify concerning the relocation benefits provided by federal law for "owner-occupants" of land who are dispossessed as a result of the operation of the Urban Renewal program. Much of Mrs. Carlson's testimony was irrelevant and immaterial to any issue to be determined by the court, and to those portions of her testimony appellants' objections should have been sustained. Appellate review of each of those errors is made difficult because appellants were permitted a "running" objection to all of Mrs. Carlson's testimony. We are of the opinion, however, particularly in view of the fact that the trial was before the court, that the admission of those portions of Mrs. Carlson's testimony did not amount to such a denial of the rights of appellants as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case. Texas Rules of Civil Procedure, rule 434.

We are of the opinion that other portions of Mrs. Carlson's testimony were of probative value. That testimony tendered to explain that values allocated to improvements for "relocation purposes" in an Urban Renewal program, as testified to by Mrs. Wiltzius, were not necessarily tantamount to "market values."

Appellants' final point of error is that the court erred in excluding the testimony of Henrietta Ison. Mrs. Ison would have testified that she was a friend of Vira Maxwell, and that Vira had told her that Sanko needed help, and that she wanted him to have the house inasmuch as she, Vira, already had a home. The court had previously admitted similar evidence through the testimony of Lillie Thomas. Appellants have not demonstrated that they were harmed by the refusal of the trial court to receive the same testimony from a second witness. Appellants' point of error is overruled.

The judgment is affirmed.

Affirmed.