**LOEB, RHOADES & COMPANY,**
Appellant,

v.

**John J. STANLEY, Appellee.**

**No. 1091.**

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 16, 1976.

Rehearing Denied Oct. 21, 1976.

Jack K. Dahlberg, Jr., Allison & Garcia, Corpus Christi, Charles P. Fincher, Brownsville, for appellant.

John J. Stanley, pro se.

## OPINION

BISSETT, Justice.

This is an appeal from a judgment against a stock brokerage company for damages allegedly sustained because of its failure to timely transact an order in securities. Plaintiff John J. Stanley, entered a "sell short" order with defendant Loeb, Rhoades & Company (Loeb), an investment securities brokerage company. Loeb purchased the requested stock for Stanley, who later sold the stock at a loss. Stanley then filed suit against Loeb and its employee, Jack N. Sutter, for damages as a result of Loeb's failure to complete Stanley's "short sale order" within the time allegedly directed. Trial was to the court without a jury. A take nothing judgment as to Sutter was rendered, and judgment in favor of Stanley in the amount of $1,425.00 was rendered against Loeb, who has appealed.

Stanley alleged that on November 20, 1973, he telephoned Sutter, who was employed by Loeb, Rhoades & Company as a securities salesman, and gave him an order to "sell short" 200 shares of McDonald Corporation; that he reaffirmed the order by telephone on November 21, 1973, and again on November 23, 1973; that the transaction was not completed until November 26, 1973, when the stock was sold at a price which resulted in the loss of a substantial profit to him.

A "short sale" is highly speculative. By a "short sale", a person undertakes to sell stock that he does not own at the time the order is given to the broker, in the hope that the price will drop during the period of time that the person is in the "short" position, and if that does occur, then the person stands to make a profit of the difference between the price that he "sold" the stock pursuant to the "short" sale order, and the subsequent price of the stock when he later purchased it to cover the "short" sale. It is

the policy of the brokerage firm (Loeb), upon receipt of a "short" sale order, not to do anything until it has received permission from its New York City Headquarters to place such an order. If permission is so granted, then it becomes the duty of the broker to execute the order by borrowing or through other means acquiring the stock, and to close it in accordance with the instructions of the customer and the requirements of the New York Stock Exchange. One of such requirements was that before a "short sale" could be made, the stock being "shorted" had to be on the "uptick". An "uptick" is a rise in price. Permission to "short" must be given on each day and such permission, when given on a particular day, cannot be carried over to the next business day.

This controversy arose from disputed facts surrounding Stanley's orders to Sutter regarding the "short" sale. Stanley contends he requested Sutter to sell "at the market" but not to "let the price drop below 40." According to Sutter, Stanley told him to "go ahead and do the best you can, but don't let it go under 40".

Concerning the telephone conversation between Stanley and Sutter relating to the placing of the order, Stanley testified:

"On the 20th of November, 1973, I placed a telephone call by long distance from Harlingen, Texas, to Loeb, Rhoades & Company, the Defendants, and gave an order to short 200 shares of McDonalds Corporation and he, in turn, asked me at what price and I said, 'At the market,' and he, in turn, . . . said, 'You can't. You have to have an uptick,' and I said—I believe I said I—'Go ahead and get one then,' or 'Get one,' or words to that effect, and I said, 'But don't let it drop below 50.' I believe that—no, I am sorry, I said, 'Don't let it drop below 40.' And he accepted my order."

Sutter, when asked: "Did the plaintiff give you a market order?", replied:

"To the best of my recollection, no, sir. He called me and stated he wished to short 200 shares of McDonalds and I told

---

him immediately, 'Before we can do it, I'll have to get permission from New York to short the stock and, from there, we'll have to have an uptick. My understanding is, 'Well, go ahead and do the best you can, but don't let it go under 40.' "

Upon the conclusion of his conversation with Stanley, Sutter sought permission from New York to make the "short" sale, but due to the lateness of the order, did not receive an answer prior to the closing of the market on that day. On the following day, November 21, 1973, Sutter again requested permission to short the stock. Permission was then granted by Loeb. Stanley then called back and reaffirmed his order with Sutter, who in turn placed a "sale order" at 52 or better. It was established by the evidence that on this date (November 21), McDonald was trading at a high of 56¼ to a low of 51, and finally closed at 51½. Sutter testified that in his judgment the trading price of McDonald on this date was not the most advantageous and, even though the stock made an uptick in price, he decided not to buy at this time. No trading occurred the next day due to the Exchange being closed for Thanksgiving. On Friday, November 23, 1973, Stanley again reaffirmed his order but Sutter was unable to place it. The sale was finally made on November 26, 1973 at 44¼. Stanley, as part of his obligation in a short order transaction, deposited money in a special "margin contract account maintained specifically for such transactions." Thereafter on March 4, 1974, Stanley completed the "short" sale by purchasing 200 shares of McDonald stock, 100 shares at 52⅝ and 100 shares at 52¾.

The trial court, among other findings of fact found: 1) Stanley on November 20, 1973, directed Sutter, a broker with Loeb, Rhoades & Company, to sell for him "short" 200 shares of McDonald Corporation upon Sutter's receiving permission from Loeb; 2) Stanley on November 21st again placed his order for the stock with Sutter, to be sold "short" and "at the market"; 3) Sutter failed to place the order on November 21st; 4) on November 26, 1973, Sutter placed Stanley's order for McDonald at 44¼; 5) that but for Sutter's failure to make the order sooner, the sale could have been made at 51⅜; 6) that Stanley sustained damages in the amount of $1,425.00 as a result.

In its conclusions of law, the court found: 1) the acts of Loeb and Sutter constituted negligence; 2) that such act was a breach of contract on Loeb's and Sutter's part; 3) that such negligence or breach of contract resulted in Stanley's loss of $1,425.00.

The findings of fact and conclusions of law are attacked by "no evidence": and "against the greater weight and preponderance of the evidence" points (1–19). In point 20, it is contended that the "evidence shows as a matter of law that Sutter 'shorted' the stock within the price range directed by Plaintiff and, therefore, Plaintiff did not sustain any legally recoverable, compensable damages".

The only witnesses who testified at the trial were Stanley and Sutter. The testimony of a party to a suit raises an issue of fact. *Bishop v. Bishop,* 359 S.W.2d 869 (Tex.Sup.1962). It is within the sole province of the trier of fact, who had the opportunity to observe the demeanor of the witnesses on the stand, to judge their credibility and the weight to be given their testimony, to resolve conflicts in the testimony of one witness with testimony of another witness, and to believe part of a witness' testimony and to disregard other portions of his testimony. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex.Civ. App., San Antonio 1951, writ ref'd); *Royal v. Cameron,* 382 S.W.2d 335 (Tex.Civ.App., Tyler 1964, writ ref'd, n.r.e.); *Ohlen v. Hagar,* 212 S.W.2d 253 (Tex.Civ.App., Fort Worth 1948, writ ref'd, n.r.e.); *Hall v. Villarreal Development Corporation,* 517 S.W.2d 326 (Tex.Civ.App., Corpus Christi 1974, writ dism'd).

The findings of fact made by the trial court will be sustained if there is some evidence of probative value to support them and they are not against the great weight and preponderance of the evidence. *Dyer v. Caldcleugh & Powers,* 392 S.W.2d 523

(Tex.Civ.App., Corpus Christi 1965, writ ref'd n.r.e.); *Miller v. Puritan Fashions Corporation,* 516 S.W.2d 234 (Tex.Civ.App., Waco 1974, writ ref'd n.r.e.); *Bavousett v. Bradshaw,* 332 S.W.2d 155 (Tex.Civ.App., Amarillo 1959, writ ref'd n.r.e.); *Cortez v. Cortez,* 457 S.W.2d 131 (Tex.Civ.App., San Antonio 1970, no writ).

A Court of Civil Appeals cannot substitute its judgment for that of the trier of fact, even though after reviewing the evidence it may have reached a different conclusion from that of the jury or the trial judge sitting without a jury. *Bardwell v. Anderson,* 325 S.W.2d 929 (Tex.Civ.App., Houston 1959, writ ref'd n.r.e.); *Dyer v. Sterett,* 248 S.W.2d 234 (Tex.Civ.App., San Antonio 1952, no writ). Nor may a Court of Civil Appeals pass upon the credibility of witnesses or substitute its findings for those made by the trial judge or jury, as the case may be. *Burchfield v. Tanner,* 142 Tex. 404, 178 S.W.2d 681 (1944).

In the case at bar, there is a direct conflict in the evidence with regard to the instructions which Stanley gave to Sutter on November 20, 1973, which were reaffirmed thereafter, as has been stated. There is probative evidence that Stanley told Sutter to make the "short" sale "at the market". There is also probative evidence that he did not so instruct Sutter, but, instead directed him to sell "short" and "do the best you can". The conflict was resolved in favor of Stanley. It is undisputed that there was an "uptick" on November 23, 1973, and had Sutter sold the stock on that day following such an "uptick", Stanley would not have sustained a loss in the amount of $1,425.00, the amount of the judgment award. There is evidence to support the findings of fact complained of in this appeal. They are not against the "greater weight and preponderance of the evidence". The conclusions of law of the trial judge are warranted by the evidence. Points 1 to 20 are overruled.

We have carefully reviewed the record in its entirety. We have also considered Loeb's remaining points of error. They are all overruled.

The judgment of the trial court is AFFIRMED.