ST. JOE PAPER COMPANY, Appellant,

v.

McNAIR TRUCKLEASE, INC., Appellee.

No. B2241.

Court of Civil Appeals of Texas, Houston (14th Dist.).

Jan. 16, 1980.

Rehearing Denied Feb. 6, 1980.

Joel W. Cook, Schlanger, Cook, Mills & Grossberg, Houston, for appellant.

Jeffrey A. Davis, Reynolds, Allen & Cook, Houston, for appellee.

Before MILLER, SALAZAR and JUNELL, JJ.

JUNELL, Justice.

Appellant St. Joe Paper Company appeals from adverse jury findings awarding dam-

ages for breach of a truck lease agreement with McNair Trucklease, Inc. St. Joe claims that there is no evidence to support the findings 1) of an agreement that the vehicles in question were subject to a lease executed by the parties, 2) of damages for St. Joe's failure to pay rentals and minimum mileage guarantees and 3) of reasonable attorney's fees. The trial court judgment is affirmed in part and reversed and rendered in part.

McNair and St. Joe were operating under a 1969 lease agreement when the parties agreed to replace several vehicles and execute a new lease. In December, 1972, a new agreement was signed which, upon the execution of a Schedule A of vehicles, authorized McNair to purchase those listed vehicles for lease to St. Joe. Schedule A, as executed, specified an increased mileage rate and minimum mileage guarantees for the listed tractors. McNair representatives estimated three to six months for delivery, and for the interim period supplied St. Joe with 1969 Mack tractors. Several of the lease trailers which were listed on Schedule A No. 2 of the December, 1972 lease were in use by St. Joe under the 1969 lease. After the December, 1972 lease was signed, and during the use of the interim 1969 Mack tractors, St. Joe was billed the same 18.5 cent per mile tractor rental as had been paid under the prior lease. The leased trailers, however, were billed at the 1972 lease rate. In May, 1973, McNair replaced the 1969 Mack tractors with 1970 Mack tractors. With this change the tractor mileage rate was increased to 22 cents per mile. McNair also air conditioned the cabs and repainted and decaled the trucks with St. Joe's logo.

The contract trailers and the interim tractors were in use and billed at the 1972 rate awaiting the arrival of the tractors ordered by McNair pursuant to the 1972 lease. Because of extremely difficult conditions in the truck manufacturing industry, the delivery of those vehicles was continually postponed. In July, 1974, St. Joe gave written notice to McNair of its intention to place all of its truck leasing business elsewhere. In October, 1974, McNair for the first time billed St. Joe for deficit tractor mileage on the claimed annual guarantee under the 1972 lease agreement, demanding payment for deficits accrued in 1974 only. In November, 1974, demand was made by McNair for alleged deficit mileage accrued for 1973 and 1974. St. Joe made no further trailer rental payments after December, 1974, claiming the trailer lease had been terminated. In March, 1975, McNair demanded payment of alleged delinquent trailer rentals for 1975, and St. Joe communicated to McNair that because of McNair's failure to maintain the trailers as agreed in the maintenance lease the agreement was terminated, and that St. Joe regarded McNair's failure to accept return of the vehicles as an abandonment of any right to possession.

The 1972 lease agreement expressly states that the lease became effective with respect to each vehicle only upon the date the delivery of the vehicle was tendered by McNair to St. Joe. It is undisputed that the tractors listed on Schedule A were never delivered by McNair. The 22 cent per mile billing rate is a provision unique to the 1972 lease agreement. There is no direct testimony of an agreement that the 1972 lease would cover the interim vehicles. The issue, then, is whether by conduct the parties agreed that the 1970 Mack Tractors were covered by the 1972 lease agreement.

The jury found that the parties had agreed that the interim vehicles were subject to the 1972 lease agreement and that $12,500.00 would compensate McNair for St. Joe's failure to pay the minimum mileage guaranteed under the lease.

The jury also found that St. Joe was obligated to pay rentals in 1975 for the five trailers, and assessed damages for St. Joe's failure to do so. St. Joe appeals claiming that there is no evidence to support the jury findings and that they are contrary to the undisputed evidence.

At trial McNair's attorneys testified as to fees incurred by hourly billing rates and that the fees were reasonable and necessary. The jury awarded $11,600.00 in fees

to plaintiff McNair. St. Joe appeals from this award claiming that there is no evidence to support the award and that the amount is excessive.

■ Appellant's attack claiming no evidence to support the jury findings requires careful scrutiny of the entire record. Such a challenge is in essence a claim that there is an absence of proof of a vital fact and that the trial court erred in not rendering judgment for the appellant on the issue in question. Appellant's first point concerns the jury finding of an agreement between St. Joe and McNair that the 1970 Mack trucks, delivered in May of 1973, would be subject to the December, 1972 lease agreement. Appellee McNair concedes that there is no direct testimony of such an agreement, but directs this Court to certain actions of the parties which allegedly show conduct sufficient to constitute an agreement. The record contains circumstantial evidence, which is "proof of collateral facts and circumstances from which the mind arrives at the conclusion that the main facts sought to be established in fact existed." *Glover v. Davis*, 360 S.W.2d 924 (Tex.Civ. App.Amarillo 1962), *rev'd on other grounds*, 366 S.W.2d 227 (Tex.1963).

■■ The lack of direct evidence and the presence of circumstantial evidence of an agreement require this Court to analyze the evidence using the "scintilla rule." This rule must be applied in examining a no evidence point when there is no direct evidence; it applies when the vital fact must be inferred from other relevant facts and circumstances proved. When the evidence offered to prove a vital fact is so weak as to do no more than to create a mere surmise or suspicion of its existence, the evidence is, in legal effect, no evidence, and will not support a verdict. *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898); Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Tex.L.Rev. 4 (1960).

■ The test is whether the vital fact can be reasonably inferred from the facts proved. In deciding that question the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965); *Woods v. Townsend*, 144 Tex. 594, 192 S.W.2d 884 (1946).

■ We hold that the evidence on which McNair relies to support the jury finding of an agreement is legally insufficient to support the verdict. The special issue in question inquires specifically as to the existence of an agreement between the parties sufficient to bring the 1970 Mack trucks within the purview of the 1972 lease agreement. To prove such an agreement McNair points to the undisputed testimony that St. Joe was billed 22 cents per mile for use of the 1970 Mack trucks. As noted above, that provision was unique to the December, 1972, lease agreement. The refurbishing of the trucks is also urged as conduct which indicates that the parties agreed that the 1972 lease was to apply. McNair points to a further circumstance which it claims supports the inference of an agreement: the interim 1969 Macks were not listed on the 1969 lease, but at trial counsel for St. Joe "admitted" that those vehicles were "covered" by the 1969 lease. McNair argues that, by parody of reasoning, the 1970 Macks not being mentioned on the 1972 lease is no impediment to their being covered by it, especially since two of the 1972 lease terms were observed.

The 22 cent per mile billing rate and McNair's refurbishing the tractors represent conduct which could give rise to conflicting inferences, one inference being that the 1972 lease was to apply. But that conclusion is not compelled by the evidence; the inference supporting the finding of an agreement is not reasonably to be drawn from the facts proved. Those same facts also support an inference of an agreement that the entire 1972 lease not apply, but that those two circumstances were specially bargained for to deal with an interim situation. McNair in its brief points to other conduct which allegedly shows an agreement, but which represents provisions already part of the pattern of conduct between the parties. We consider this also to

be no evidence of probative value that the 1972 lease was to apply in its entirety.

McNair's argument that St. Joe's counsel's "admission" allows the inference that the 1970 Macks were intended to be covered by the 1972 lease is not a reasonable inference. Initially, a statement by counsel at trial that the 1969 lease, not in issue, "covered" certain trucks does not make that statement true. Further, the contention that the 1970 Macks could be covered by the 1972 lease, even though not listed on the Schedule of leased vehicles, is no evidence of probative force to show the *agreement* that they be covered. The jury finding which must be supported in the evidence is of the agreement.

Thus, using the *Garza* test of considering only the evidence to support the finding of an agreement, we hold that the conclusion of an agreement between the parties cannot be reasonably inferred from the facts proved. Calvert, in his "No Evidence" article cited above, states that when conflicting inferences may be drawn from the facts proved, after applying the test used here, the appellate court may consider contrary inferences to determine whether the supporting inference may be drawn with reasonable certainty. Using this directive, the inference of the jury finding becomes all the more unreasonable. The facts show that the very terms of the 1972 lease operate to exclude non-listed vehicles. The "property covered" is described in the lease as "the vehicles described in each Schedule A now or from time to time hereafter executed by the parties and made a part of this agreement." The lease by its terms became effective with respect to each vehicle upon the date the delivery was tendered by McNair to St. Joe, and was to continue with respect to that vehicle until terminated in accordance with Section 5 of the lease. It is undisputed that the vehicles listed on Schedule A were never delivered to St. Joe. Upon St. Joe's letter of termination of business dealings in 1974, McNair never called for St. Joe's compliance with Section 5 which obligated St. Joe to purchase the tractors at a depreciated value. This would infer that McNair did not at that time consider the 1972 lease terms applicable to the trucks then in use. Section 4(F) of the 1972 lease further states that the lease terms "shall not hereafter be construed as altered by any oral agreement or informal writing, . . . but alterations, additions, or changes in this agreement shall be accomplished only by written endorsement hereon, or amendment hereto, or additional schedules made a part hereof duly executed by both parties." There is no testimony that the Schedule A of tractors was ever altered or amended. A pre-1972 lease letter to St. Joe indicates that McNair regularly painted the leased trucks used by St. Joe; thus, their painting the 1970 Macks cannot be used to strengthen the inference of an agreement. The only direct testimony regarding an agreement was that from a St. Joe official expressly stating that there was none. These facts, coupled with a total lack of direct testimony of an agreement, render the inference of an agreement unreasonable.

Appellant's point of error claiming no evidence to support the jury finding of an agreement is sustained. Accordingly, because the 1972 lease terms never became applicable to the trucks, the provisions concerning minimum mileage guarantees for trucks were not applicable; and that portion of the trial court's judgment awarding damages for failure to pay minimum mileage guarantees is reversed. Judgment is rendered that McNair take nothing with reference to its claim for such damages.

Appellant's third and fourth points of error claim no evidence to support the jury findings of St. Joe's obligation to pay monthly trailer rentals in 1975 and damages for its failure to do so. We find that there is evidence to support these findings and overrule appellant's third and fourth points of error.

As noted above, the 1972 lease by its terms became applicable to each vehicle upon the date delivery was tendered. There is no dispute that the trailers listed on Schedule A No. 2 of the 1972 lease were in St. Joe's possession; thus, the lease terms

were applicable to those vehicles. There were no minimum mileage provisions regarding the trailers, and in July, 1974, St. Joe gave notice that it was placing its leasing business elsewhere. The termination provisions of the lease stated that in such event it was to be accomplished only on an anniversary date of the contract, and that St. Joe would then purchase the vehicles at their depreciated value. It further stated that if the vehicles were not purchased, they were to be promptly returned to McNair's premises. St. Joe indicated in the July, 1974, letter that McNair's suggestion that St. Joe assume responsibility for the depreciated value " . . . seems to be a reasonable proposition." St. Joe continued paying monthly rentals through December, 1974, the second anniversary date of the lease. In March, 1975, St. Joe wrote that it had no more use for the trailers and considered McNair's refusal to accept return of the vehicles an abandonment of any right to possession. McNair responded demanding payment of delinquent rentals and that St. Joe purchase the trailers pursuant to the lease terms. The trailers remained in St. Joe's possession throughout 1975, and McNair sued for the rentals for that period.

It is undisputed that St. Joe neither purchased nor returned the trailers; therefore, whether or not the lease was effectively terminated, the retention of the trailers without compensation was wrongful. McNair in its second amended petition made an alternative plea to recover in *quantum meruit* or *quantum valebant.* St. Joe was obligated to compensate McNair for its failure to comply with lease provisions, or for its wrongful retention of the vehicles after termination. The jury found such an obligation to pay monthly rentals in response to Special Issue No. 3. In response to Special Issue No. 4 the jury found that $8,400.00 would compensate McNair for St. Joe's failure to pay such rentals in 1975. The testimony in the record is of the actual monthly rentals billed and paid under the lease agreement. Such testimony constitutes evidence of the reasonable rental owed McNair for the retention, and the jury finding could include the obligation to pay a reasonable rental. Thus, it is irrelevant whether the lease had been terminated in December, 1974. St. Joe's retention of the vehicles without compensation was wrongful in either case, and there is evidence in the record to support the jury findings. Appellant's third and fourth points of error are overruled.

St. Joe's points of error seven, eight and nine attack the award and amount of attorney's fees contending that there is no evidence to support the finding that $11,600.00 is a reasonable fee. They also contend that the amount is excessive because it is based only on a time basis and it awards compensation for services rendered in connection with claims for which no recovery was granted. We overrule these points and affirm the award.

Appellant contends that because McNair's initial demand and amount sued for ($57,150.20) far exceeds the amount recovered ($20,900.00), this constitutes an "unjust" demand and thus, the jury's answer awarding fees to prosecute those claims is excessive. McNair non-suited one claim before the case was submitted to the jury; and appellant claims that because the billed hours for that claim were not segregated, the award is excessive. Trial testimony was of the number of hours spent, amount billed per hour and that such a billing rate was reasonable.

In the case of *Magids v. Dorman,* 430 S.W.2d 910 (Tex.Civ.App.—Houston [14th Dist.] 1968, writ ref'd n. r. e.), plaintiff sued for $14,000.00; the jury awarded him $500.00, and awarded $1,500.00 in attorney's fees. This Court affirmed the award of those fees explaining that "[a]n attorney cannot vouch for the total correctness of his client's claim and neither should the amount of his fee be wholly contingent on the amount of actual recovery." 430 S.W.2d at 912. This Court noted that the determination of the reasonable value of an attorney's service is one of fact for the jury and, given sufficient support in the evidence, will not be disturbed on appeal. Appellant claims that the jury answer awards compensation

for claims abandoned before submission and, therefore, is excessive. Appellant's point of error addresses the jury response, but his real objection is to the *issue* which allowed the jury to consider matters which he contends are improper. As such, it was his duty to object on that ground to the issue before its submission to the jury. Because his objection to that issue contains no such language, the objection was waived for purposes of appellate review. Tex.R.Civ.P. 272.

We hold that there was sufficient evidence to support the jury finding and award of attorney's fees; thus, appellant's points of error seven, eight and nine are overruled. All other points of error have been considered and are overruled.

Judgment of the trial court is reversed and rendered that plaintiff-appellee McNair take nothing on its claim under the minimum mileage guarantees. The remainder of the judgment is affirmed.