In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00110-CV
______________________________


KINDER MORGAN NORTH TEXAS PIPELINE, L.P., Appellant
 
V.
 
WILLIAM R. JUSTISS, II, DARLENE E. JUSTISS,
THOMAS H. ALSPAUGH, AND JUDY ALSPAUGH, Appellees


                                              

On Appeal from the 62nd Judicial District Court
Lamar County, Texas
Trial Court No. 70,052


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Ross


O P I N I O N

          This appeal arises from a lawsuit regarding a tract of land formerly used as a
railroad right-of-way (railroad tract), but which had not been used for that purpose in
decades. Kinder Morgan North Texas Pipeline, L.P., obtained a deed without warranty to
the railroad tract to use in construction of a pipeline. The jury found that William R.
Justiss, II, and wife, Darlene E. Justiss, and Thomas H. Alspaugh, and wife, Judy
Alspaugh, had adversely possessed the railroad tract. The jury awarded both couples
compensatory and exemplary damages. On appeal, Kinder Morgan raises sixteen points
of error. The points of error can be summarized as follows: 1) the evidence of adverse
possession is legally and factually insufficient, 2) the evidence of actual damages is legally
and factually insufficient, and 3) the evidence of exemplary damages is legally and factually
insufficient. 
Background
          In the late nineteenth century, the Texas Midland Railroad obtained a fee simple
interest in the railroad tract. Over the years, ownership changed hands and the title
eventually passed to Southern Pacific Railroad Company. In the early 1970s, the North
Sulphur River flooded at least twice, damaging a railroad bridge. Sometime in 1975 or
1976, Southern Pacific removed the tracks and crossties from the railroad tract. Ultimately,
Union Pacific Railroad Company obtained record title.
          Shortly after the removal of the tracks and crossties in the mid-1970s, the Justisses
and the Alspaughs fenced the disputed portions of the railroad tract. Since that time, the
Justisses and the Alspaughs have maintained the fences and used the railroad tract for a
variety of purposes, including growing crops, running cattle, and for flood control. 
          After conducting a record search, Kinder Morgan contacted Union Pacific
concerning the railroad tract. Union Pacific confirmed title ownership, and Kinder Morgan
eventually obtained a deed without a warranty to the railroad tract from Union Pacific. 
Sometime in 2001, Thomas Alspaugh observed surveyors on his and the Justisses'
properties. Alspaugh informed the surveyors they did not have permission to be on the
property. The Alspaughs' and the Justisses' attorney had a letter hand-delivered to Kinder
Morgan. Kinder Morgan responded to this letter, referencing the deed without warranty
from Union Pacific as proof of ownership. The Alspaughs and Justisses introduced into
evidence at trial a letter to Kinder Morgan, responding to its claim of ownership by virtue
of the deed from Union Pacific.


 In the letter, the Justisses and the Alspaughs claimed
ownership through adverse possession. 
          Despite being put on notice of possible adverse possession claims, Kinder Morgan
proceeded to construct the pipeline. Following a series of confrontations between the
Justisses and Kinder Morgan's contractors, Kinder Morgan sought and obtained a
temporary injunction against the Justisses and the Alspaughs. The Justisses and the
Alspaughs filed a general denial and a counterclaim, alleging they had adversely
possessed the disputed property. While the lawsuit was pending, Kinder Morgan
completed the construction of the pipeline. In the process of doing so, approximately 1,000
trees were removed and the levee, which the railroad had constructed to control flooding,
was flattened. After construction was completed, Kinder Morgan supplemented its original
petition asserting an alternative cause of action to condemn an easement across the
railroad tract. Before trial, the court granted Kinder Morgan's motion for partial summary
judgment on the issue of condemnation. At trial, the jury found the Justisses and the
Alspaughs had adversely possessed the portions of the railroad tract adjoining their
properties. The jury awarded the Justisses $25,000.00 in compensation for the
condemned easement, $60,000.00 in damages sustained to their remaining property, and
$100,000.00 for the loss of use of the railroad tract. The jury awarded the Alspaughs
$10,000.00 in compensation for the condemned easement, $50,000.00 in damages
sustained to their remaining property, and $50,000.00 for the loss of use of the railroad
tract. In addition, the jury awarded each couple $100,000.00 in exemplary damages. The
trial court denied Kinder Morgan's motion for judgment notwithstanding the verdict except
for that portion concerning loss of use damages.


 The trial court rendered judgment for
$95,000.00 in actual damages to the Justisses and $70,000.00 in actual damages to the
Alspaughs. The trial court also rendered judgment for $100,000.00 in exemplary damages
to each couple.
Summary
          We first address whether Kinder Morgan preserved its factual sufficiency points of
error for our review and conclude it did preserve factual sufficiency concerning the actual
damages, but failed to preserve its factual sufficiency arguments relating to the jury's
findings on adverse possession and exemplary damages. We reject Kinder Morgan's
argument that recitals contained in a deed of trust relating to the Justisses' adjoining
property is, as a matter of law, an acknowledgment of title in another. The evidence that
the Justisses and the Alspaughs adversely possessed the railroad tract is legally sufficient. 
Further, the evidence is factually sufficient even if Kinder Morgan had preserved error. 
Next, we conclude the evidence is legally and factually sufficient for the damages relating
to the condemnation and the damages to adjoining property. However, we conclude that
the evidence concerning the award for loss of use damages, as to both the Justisses and
the Alspaughs, is factually insufficient. Last, we conclude that the evidence is legally
insufficient to support the award of exemplary damages. 
Preservation of Error
          Before we address the merits of Kinder Morgan's contentions, we must first
determine whether Kinder Morgan has preserved all its issues raised on appeal. In its
brief, Kinder Morgan challenges both the legal and factual sufficiency of the evidence. 
Although Kinder Morgan filed a motion for JNOV, a factual sufficiency point of error must
be preserved with a motion for new trial.


 However, a motion should be construed by its
substance to determine the relief sought, not merely by its form or caption. Surgitek,
Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex. 1999); Rittenhouse v. Sabine
Valley Ctr. Found., Inc., 161 S.W.3d 157, 164 (Tex. App.—Texarkana 2005, no pet.). 
          In its fifteen-page motion for JNOV, Kinder Morgan focused on whether the
evidence was legally sufficient. The motion, though, does argue, in the alternative, that the
awards concerning the value of the condemned easement, the loss of use, and the
damages to the Justisses' and the Alspaughs' adjoining property should be reduced. 
Although the motion does not allege the jury's verdict was so contrary to the great weight
and preponderance of the evidence as to be manifestly unjust or clearly wrong, the
essence of the argument is that the damages are excessive. A challenge alleging that the
damages awarded by the jury are excessive, including a request for a remittitur, is
reviewed as a factual sufficiency challenge. Mar. Overseas Corp. v. Ellis, 971 S.W.2d 402,
406 (Tex. 1998); Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex. 1987); Baribeau
v. Gustafson, 107 S.W.3d 52, 61 (Tex. App.—San Antonio 2003, pet. denied), cert. denied,
543 U.S. 871 (2004). 
          Based on its substance, Kinder Morgan's motion for JNOV preserved factual
sufficiency concerning the condemnation award, loss of use damages, and damages to the
adjoining property. Although the motion did not specifically state the evidence was
factually insufficient, the motion did argue the damages were excessive. Because the
issue of whether damages are excessive involves a factual sufficiency challenge, Kinder
Morgan's motion was in essence a motion for new trial concerning the loss of use
damages, the condemnation of the easement damages, and the damages to the Justisses'
and the Alspaughs' adjoining properties. 
          Kinder Morgan, however, failed to preserve its factual sufficiency arguments relating
to the adverse possession claims and the exemplary damages. In its motion for new trial,
a party must specifically point out the deficiencies in a manner that adequately apprises
the trial court of those deficiencies. Arroyo Shrimp Farm, Inc. v. Hung Shrimp Farm, Inc.,
927 S.W.2d 146, 150 (Tex. App.—Corpus Christi 1996, no writ); see Tex. R. App. P. 33.1. 
Kinder Morgan failed to argue the evidence was factually insufficient concerning either of
these issues. Instead, Kinder Morgan only argued there was no evidence of adverse
possession and no evidence of malice. Thus, Kinder Morgan has not preserved the issues
of whether the evidence of adverse possession, or the evidence in support of exemplary
damages, is factually sufficient. 
Standards of Review
          When deciding a legal sufficiency challenge, we must consider all the evidence in
the record in the light most favorable to the party in whose favor the verdict has been
rendered, and we must apply every reasonable inference that could be made from the
evidence in that party's favor. Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711
(Tex. 1997). We are to consider only the evidence and inferences that tend to support the
finding and disregard all evidence and inferences to the contrary. Bradford v. Vento, 48
S.W.3d 749, 754 (Tex. 2001); Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex.
1990). A legal sufficiency point of error will be sustained when 1) there is a complete
absence of evidence of a vital fact; 2) the court is barred by rules of law or of evidence
from giving weight to the only evidence offered to prove a vital fact; 3) the evidence offered
to prove a vital fact is no more than a mere scintilla; or 4) the evidence conclusively
establishes the opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998). More than a scintilla of evidence exists if the evidence
furnishes some reasonable basis for differing conclusions by reasonable minds about the
existence of a vital fact. Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co., 77 S.W.3d 253, 262
(Tex. 2002). Anything more than a scintilla of evidence is legally sufficient to support the
finding. Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). 
          If we find some probative evidence, we will test the factual sufficiency of that
evidence by examining the entire record to determine whether the finding is clearly wrong
and unjust. When considering a factual sufficiency challenge to a jury's verdict, courts of
appeals must consider and weigh all the evidence, not just that evidence which supports
the verdict. Ellis, 971 S.W.2d at 407. A court of appeals can set aside the verdict only if
it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong
and unjust. Id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). The court of appeals is
not a fact-finder. Accordingly, the court of appeals may not pass on the witnesses'
credibility or substitute its judgment for that of the jury, even if the evidence would clearly
support a different result. Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761
(Tex. 2003); Ellis, 971 S.W.2d at 407. If we find the evidence insufficient, we must clearly
state why the jury's finding is factually insufficient or is so against the great weight and
preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715
S.W.2d 629, 635 (Tex. 1986). 
Adverse Possession 
          Adverse possession requires a showing of "actual, exclusive, continuous, visible,
and notorious possession, distinct and hostile" for the duration of the statutory period. 
W. T. Carter & Bros. v. Holmes, 131 Tex. 365, 113 S.W.2d 1225, 1226 (1938). To prevail
on a claim of adverse possession under Section 16.026(a), the elements that must be
proved are: 1) actual and visible possession of the disputed property; 2) that is adverse
and hostile to the claim of the owner of record title; 3) that is open and notorious; 4) that
is peaceable; 5) that is exclusive; and 6) the property was consistently and continuously
cultivated, used, or enjoyed for ten years. Tex. Civ. Prac. & Rem. Code Ann. §§ 16.021,
16.026(a) (Vernon 2002); see Natural Gas Pipeline Co. of Am. v. Pool, 124 S.W.3d 188,
193–94 (Tex. 2003); Glover v. Union Pac. R.R. Co., 187 S.W.3d 201, 213 (Tex.
App.—Texarkana 2006, pet. denied). 
          In determining what will amount to "adverse possession," considerable importance
is placed on the nature of the land and its use. Mohnke v. Greenwood, 915 S.W.2d 585,
593 (Tex. App.—Houston [14th Dist.] 1996, no writ). While the claimant's actions must be
of such a character as to unmistakably indicate a claim of exclusive ownership, whether
adverse possession of property has been established is normally a question of fact, rather
than a question of law. Rhodes v. Cahill, 802 S.W.2d 643, 645–46 (Tex. 1990).
          Kinder Morgan contends the evidence supporting a finding of adverse possession
is insufficient because the Justisses admitted Southern Pacific owned the railroad tract. 
In addition, Kinder Morgan claims the evidence failed to establish the Justisses' or the
Alspaughs' actions were inconsistent with and hostile to the ownership of the railroad tract
by Southern Pacific and failed to show the Justisses continuously cultivated, used, or
enjoyed the disputed portions of the railroad tract. 
          Justisses' Adverse Possession Claim Not Defeated by Loan Application
          According to Kinder Morgan, the Justisses' claim of adverse possession fails, as a
matter of law, because the Justisses executed, and allowed to be filed in the records of
Lamar County, a deed of trust containing recitals acknowledging the railroad tract was
owned by Southern Pacific. In 1983, the Justisses applied for a loan from the Federal
Land Bank, secured by their property adjoining the railroad tract. The deed of trust filed
in connection with the loan included a survey containing recitals referencing the railroad
tract as "railroad property" and as being owned by the "Southern Pacific Railroad." Kinder
Morgan contends the recitals constitute an admission, defeating the Justisses' adverse
possession claim.
          Kinder Morgan cites Bruni v. Vidaurri, 140 Tex. 138, 150, 166 S.W.2d 81, 88 (1942),
for the proposition that acknowledgment of title in another will defeat an adverse
possession claim. Kinder Morgan claims the recitals defeat the claim of adverse
possession as a matter of law. In Bruni, the Texas Supreme Court held that an offer to
purchase property creates a fact issue concerning whether possession before the offer was
adverse. Id. Ultimately, the Texas Supreme Court determined the evidence was sufficient
to support the jury's determination of adverse possession, despite the offer to purchase the
property. Id. Although Bruni does state in dicta that an acknowledgment of title in another
will defeat an adverse possession claim, Bruni does not stand for the proposition that
recitals in a deed constitute an acknowledgment of title as a matter of law. 
           Under circumstances similar to this case, Texas courts have disagreed with Kinder
Morgan's proposition. A mere mention of an adjoining tract in describing the location of
another tract being conveyed is not conclusive recognition of title to the adjoining tract. 
Halsey v. Humble Oil & Ref. Co., 66 S.W.2d 1082, 1091–92 (Tex. Civ. App.—Beaumont
1933, writ denied). A recital in a contract is not binding in a suit that is not based on that
contract. Perry Nat'l Bank v. Eidson, 161 Tex. 340, 340 S.W.2d 483, 486 (1960); Earwood
v. Smart, 107 S.W.3d 1, 5 (Tex. App.—San Antonio 2002, pet. denied). Further, whether
an adverse claimant's conduct constitutes an acknowledgment of title in another is a
question of fact. Bruni, 166 S.W.2d at 88; Cuniff v. Bernard Corp., 94 S.W.2d 577 (Tex.
Civ. App.—Beaumont 1936, writ ref'd).
          In a similar case, this Court has held such admissions constitute evidence contrary
to a claim of adverse possession, but are not conclusive, and must be weighed along with
all other evidence of adverse possession. Cargill v. Buie, 343 S.W.2d 746, 749 (Tex. Civ.
App.—Texarkana 1960, writ ref'd n.r.e.) (ratification agreement between adjoining
landowner and oil company). We see no reason to deviate from our prior holding. 
Therefore, the recital is evidence contrary to adverse possession, but is not conclusive. 
The recital only creates a fact issue and does not, as a matter of law, defeat the Justisses'
claim of adverse possession. 
          Evidence Sufficient to Support the Justisses' Adverse Possession Claim
          In the alternative, Kinder Morgan argues the evidence is insufficient to prove the
Justisses adversely possessed the railroad tract even if the recitations are not admissions. 
Kinder Morgan contends the evidence is insufficient to establish that the Justisses
continuously cultivated, used, or enjoyed the disputed portions of the railroad tract. 
          The Justisses testified to considerable use of the property. Shortly after the railroad
removed the tracks, the Justisses built permanent fences enclosing the portion of the
railroad tract adjoining their property and have maintained the fences for over twenty-five
years. Since fencing the property, the Justisses have grazed cattle on the property. After
the railroad removed the tracks and crossties, the railroad never maintained the property
again. The Justisses have maintained the property since that time, and, in addition to
grazing cattle on it, have dug at least one stock pond on the property. The Justisses rebuilt
and have maintained the levee originally constructed by the railroad. The Justisses hired
contractors to do bulldozer work on the levee, and sprigged the ground and planted
Bermuda grass. The Justisses filled in a slough


 on the property and cut an emergency
spillway. 
          Joe Don Mashburn, a neighbor of the Justisses, testified the Justisses had used
bulldozers to repair the levee, had installed pipe drops, drainage, and a drop structure. 
Mashburn testified it "seemed like every year [Justiss] would be doing something to work
on that levee." In addition, Mashburn testified the Justisses had cleared timber on the
property. 
          The fencing of land has long been recognized as visible appropriation. Stafford v.
Jackson, 687 S.W.2d 784, 787 (Tex. App.—Houston [14th Dist.] 1985, no writ); Mixon v.
Clark, 518 S.W.2d 402 (Tex. Civ. App.—Tyler 1974, writ ref'd n.r.e.); Peveto v. Herring,
198 S.W.2d 921 (Tex. Civ. App.—Beaumont 1946, no writ). The Justisses presented
evidence they had fenced the railroad tract, maintained the fences and the levee, and
grazed cattle on the tract for approximately twenty-five years.


 There is more than a
scintilla of evidence of adverse possession. 
          Further, even if Kinder Morgan had preserved factual sufficiency, the great weight
and preponderance of the evidence does not indicate that the jury's conclusion is clearly
wrong or manifestly unjust. Kinder Morgan alleges three specific actions the Justisses
should have taken if their claim was exclusive and hostile. Specifically, Kinder Morgan
claims the Justisses failed to require the surveyor who prepared the Federal Loan Bank
survey in 1983 to correct his survey plat and field notes, failed to file an affidavit in the
Lamar County real property records asserting ownership of the railroad tract, and failed to
seek to include the railroad tract in the Farm Services Agency support program. While
such actions would have been consistent with a claim of ownership, the Justisses were not
required to take these actions in order to perfect their claim of adverse possession. 
          Kinder Morgan also contends the fact that cattle were rotated on the railroad tract
defeats the Justisses' claim. When a person in possession of land is shown to have used
and enjoyed it as an owner of land usually does, the natural inference is that possession
was taken and held for such person as owner and that is, therefore, inconsistent with and
hostile to the claim of another. Whittle v. Johnston, 392 S.W.2d 867 (Tex. Civ.
App.—Texarkana 1965, writ ref'd n.r.e.). The jury was entitled to conclude an owner of a
strip of property such as the railroad tract would ordinarily rotate cattle on the property.
          Last, Kinder Morgan contends the Justisses' adverse possession claim fails
because they did not correct the recitations in a survey at the Federal Loan Bank. As
discussed above, such recitations do not, as a matter of law, defeat an adverse possession
claim. Considering the evidence in a neutral light, the jury's conclusion that the recital was
not a recognition of title is not so against the great weight and preponderance of the
evidence as to be manifestly unjust or clearly wrong. 
           There is more than a scintilla of evidence of each element of adverse possession. 
Therefore, the evidence is legally sufficient. Even if error had been preserved for our
review, the evidence is factually sufficient. Although the recitals are evidence contrary to
the Justisses' claim of exclusive, hostile, and continuous possession, the evidence is
sufficient to support the jury's conclusion the recitals were not a recognition of title when
the recitals are considered with the other evidence of adverse possession. The jury's
conclusion that the Justisses own the railroad tract by virtue of adverse possession is not
so contrary to the great weight and preponderance of the evidence as to be clearly wrong
or manifestly unjust. 
          Evidence Sufficient to Support the Alspaughs' Adverse Possession Claim
          Kinder Morgan contends the evidence is legally and factually insufficient to prove
the Alspaughs adversely possessed the railroad tract because the evidence is insufficient
to establish that the Alspaughs continuously cultivated, used, or enjoyed the disputed
portions of the railroad tract. 
          The Alspaughs presented considerable evidence of actual, visible, hostile,
notorious, and exclusive use of the property for approximately twenty-five years. Soon
after the railroad removed its tracks and crossties, the Alspaughs fenced in the portion of
the railroad tract adjoining their property. Since that time, the Alspaughs have maintained
the fences. For a considerable number of years, they planted crops, usually grain
sorghum, on the railroad tract and would let their cattle graze on the stalks after the fields
were harvested. Their cattle would use the portion of the property with trees for shelter. 
The Alspaughs maintained a trail from the railroad tract, which they used to access their
other pastures. The Alspaughs also cultivated grass on a portion of the railroad tract. 
Thomas Alspaugh testified he has had cattle constantly on the railroad tract since he
fenced the property. In places, the Alspaughs removed gravel from the property to
promote the growth of grass. The Alspaughs have maintained the property and claimed
it as their own since the railroad removed the tracks and crossties. More than a scintilla
of evidence exists for each element of adverse possession.
          Kinder Morgan alleges there are four specific actions the Alspaughs failed to take
which defeats their claim of adverse possession. It claims the Alspaughs should have paid
taxes on the property, filed an affidavit in the Lamar County real property records asserting
ownership of the railroad tract, explicitly state to someone that they were claiming
ownership of part of the railroad tract, and included the railroad tract in the Farm Services
Agency support program. 
          Although the payment of taxes can be evidence of a claim of ownership,


 adverse
possession does not require a deed or the payment of taxes unless required by the
relevant statute. See Gotoskey v. Grawunder, 158 S.W. 249, 251 (Tex. Civ.
App.—Galveston 1913, no writ). Thomas Alspaugh testified he did not include the railroad
tract in the Farm Service Agency support program because the agency required a deed
and the property did not qualify since it had not been historically crop land. Adverse
possession, though, does not require the Alspaughs to undertake every possible method
of asserting ownership. 
          Further, Kinder Morgan contends the evidence shows, at best, only intermittent use
of the property. Thomas testified, according to Kinder Morgan, that he rotated cattle
between pastures and "had not grown crops on the property." The record shows, however,
that Thomas testified he never grew crops on the southern portion of the railroad tract, but
testified to extensive use of the northern portion of the railroad tract for growing sorghum
and wheat. Further, he testified that the portion of the railroad tract not used for crops was
used to graze cattle and as shelter for the cattle. Although Thomas testified he would
rotate his cattle between pastures, he also testified that cattle were always on at least part
of the property. 
          Adverse possession only requires a claimant to use the property in the same
manner an ordinary owner would use the property. Whittle, 392 S.W.2d at 867. The jury's
conclusion the Alspaughs owned the railroad tract by virtue of adverse possession is not
so contrary to the great weight and preponderance of the evidence as to be manifestly
unjust or clearly wrong. The evidence is legally and factually sufficient.
Actual Damages
          Kinder Morgan also challenges the sufficiency of the evidence concerning the actual
damages awarded the Justisses and the Alspaughs. Although the jury awarded larger
damages than requested in oral argument, a jury may award more damages than
requested if there is evidence supporting the higher award.


 See City of Fort Worth v.
Zimlich, 29 S.W.3d 62 (Tex. 2000). The awards for the condemnation of the easement
and for damages to the Justisses' and the Alspaughs' adjacent properties are supported
by sufficient evidence. However, the evidence is insufficient to support the award for loss
of use.
          Evidence Sufficient to Support Award to Justisses for Condemnation
          First, Kinder Morgan contends the evidence is legally and factually insufficient
concerning the award for condemnation of the easement. Kinder Morgan claims the
evidence supports, at the most, damages in the amount of $3,347.00.
          William Justiss testified that, because of the importance of the railroad tract to
prevent his property from flooding, it was worth between $2,000.00 and $3,000.00 per
acre. Kinder Morgan contends William's testimony amounts to no evidence because he
failed to testify as to a fair market value for the property after the installation of the pipeline. 
However, William testified the property had no value in its current condition. Because
approximately ten acres were condemned by Kinder Morgan,


 the evidence supported the
jury's award of $25,000.00. There is more than a scintilla of evidence supporting the jury's
verdict. 
          Kinder Morgan argues the only competent evidence on the value of the railroad tract
was the testimony of Murphy. Kinder Morgan contends that neither William nor Thomas
were competent to testify concerning the value of their respective tracts of land. A property
owner, though, can provide opinion testimony regarding diminution in market value
resulting from damage to such owner's land. Waste Disposal Ctr., Inc. v. Larson, 74
S.W.3d 578, 583 (Tex. App.—Corpus Christi 2002, pet. denied). William testified he was
familiar with the market value of farm and ranch land. In addition, William was on the State
Water Planning Committee, was a director of the Texas Farm Bureau, and was a director
of Agriland, a cooperative of farmers which makes loans for farm and ranch land. As a
director in these organizations, William had considerable exposure to current market prices
of farm and ranch land. Thomas testified he had farmed and ranched his entire life and
had familiarized himself with current market prices before trial. We find that William and
Thomas were competent to testify regarding the value of their respective tracts of land. 
          The evidence is also factually sufficient. In calculating damages in a condemnation
case, the jury is not bound by expert testimony, but must stay within the evidence when
making its determination. Parallax Corp., N.V. v. City of El Paso, 910 S.W.2d 86 (Tex.
App.—El Paso 1995, writ denied). Murphy testified the value of the easement on the
Justisses' tract was only $3,347.00.


 Murphy's calculations were based on a condemnation
of only 5.77 acres, even though he later admitted the area condemned was actually 10.9
acres. William testified that approximately twelve acres were condemned. 
          Even if the great weight and preponderance of the evidence requires a conclusion
that the property still has some value, the jury's award of $25,000.00 is within the range of
the testimony. Murphy testified the property had lost eighty percent of its value. Assuming
the jury believed William that the property was worth $3,000.00 per acre, but believed
Murphy that the property still retained twenty percent of its value, the jury could have
awarded up to $26,160.00. The evidence is legally and factually sufficient to support an
award of $25,000.00 to compensate the Justisses for the land that was condemned.
          Evidence Sufficient to Support the Award to Alspaughs for Condemnation
          In addition, Kinder Morgan argues the evidence is legally and factually insufficient
to support the jury's award to the Alspaughs. Although Thomas testified the easement
reduced the value of his property by about $250.00 per acre for 9.8 acres, the jury awarded
him $10,000.00. Murphy testified that the easement reduced the value of the property by
$2,940.00. Murphy testified that the property was worth only around $750.00 per acre and
that the easement reduced the value of the railroad tract by eighty percent. Murphy based
his calculations on only 4.9 acres being condemned. However, the amount of land actually
condemned was disputed at trial and Murphy later recalculated the land condemned as 9.8
acres. The record contains evidence that nearby property had been sold for $1,100.00 per
acre. Kinder Morgan paid $1,000.00 per acre for a deed without warranty to the railroad
tract. 
          At the most, the evidence is in conflict. This Court is not a fact-finder and may not
pass on the credibility of the witnesses or substitute its judgment for that of the trier of fact. 
Ellis, 971 S.W.2d at 407; Bellefonte Underwriters Ins. Co. v. Brown, 704 S.W.2d 742, 744
(Tex. 1986) (findings of fact are exclusive province of the jury or trial court). Where there
is conflicting evidence, the fact-finder's verdict on such matters is generally regarded as
conclusive. Edmunds v. Sanders, 2 S.W.3d 697, 703 (Tex. App.—El Paso 1999, pet.
denied); see Pool, 715 S.W.2d at 633. 
          The jury is not required to determine the amount of damages with mathematical
precision. State v. Buckner Constr. Co., 704 S.W.2d 837, 843 (Tex. App.—Houston [14th
Dist.] 1985, writ ref'd n.r.e.); Nueces Trust Co. v. White, 564 S.W.2d 798, 804 (Tex. Civ.
App.—Corpus Christi 1978, no writ); see Hindman v. Tex. Lime Co., 157 Tex. 592, 305
S.W.2d 947, 953 (1957). Although the record does not contain evidence that exactly
matches the jury's award, the record contains evidence that the value of the easement is
approximately $10,000.00. A verdict will be set aside on appeal only where the record
clearly indicates that the award was based on passion, prejudice, or improper motive, or
is so excessive as to shock the conscience. SunBridge Healthcare Corp. v. Penny, 160
S.W.3d 230, 247–48 (Tex. App.—Texarkana 2005, no pet.); Transit Mgmt. Co. of Laredo
v. Sanchez, 886 S.W.2d 823, 826 (Tex. App.—San Antonio 1994, no writ). Because there
was evidence that approximately ten acres of land were condemned, an award of
$10,000.00 is not so contrary to the great weight and preponderance of the evidence as
to be clearly wrong, to be manifestly unjust, or to shock the conscience. The evidence is
legally and factually sufficient.
          Evidence Insufficient to Support Award for Loss of Use
          Although the jury awarded $100,000.00 to the Justisses and $50,000.00 to the
Alspaughs as loss of use damages, the trial court suggested a remittitur, reducing the
award to $10,000.00 for each couple. Kinder Morgan contends the evidence is factually
insufficient to support the reduced award. We agree.
          The Justisses contend the trial court's award is supported by sufficient evidence. 
William testified the effect on his cattle and his own extra work due to the loss of use of the
property was worth approximately $2,000.00. The Justisses also contend the jury could
consider Murphy's estimation that it would take $4,800.00 to $5,000.00 in gravel and
$500.00 in equipment to reconstruct a hay storage unit on the property. In addition, the
Justisses contend the jury could award additional damages for the cost to replace fences,
cut trees left leaning, and other damages. Thomas testified the loss of the railroad tract
caused him extra work worth at least $1,000.00. He also testified he had trouble moving
cattle from one pasture to another, was unable to use the railroad tract for grazing, and
incurred other damages. 
          The rental value of a property is the ordinary method of calculating damages for a
temporary loss of use of property. Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture, 50
S.W.3d 531, 545 (Tex. App.—El Paso 2001, no pet.). Neither the Justisses nor the
Alspaughs testified concerning the rental value of the railroad tract. However, when a
property is not rentable, the owner may resort to proving the actual worth of use. Sw. Bell
Tel. Co. v. Hamil, 116 S.W.3d 798 (Tex. App.—Fort Worth 2003, no pet.). The jury was
presented testimony that the property could not be rented. However, not all of the
damages relied on by the Justisses and the Alspaughs relate to loss of use. 
          The cost of reconstructing the hay storage unit relates to cost of restoration, rather
than loss of use. The Justisses and the Alspaughs contend the cost of restoring the land
can also be recovered as loss of use damages. In support of this proposition, the
Justisses and the Alspaughs cite Carter v. Barclay, 476 S.W.2d 909 (Tex. Civ.
App.—Amarillo 1972, no writ). Although Barclay concerned temporary injury to realty and
allowed recovery for the cost of restoration, Barclay does not stand for the proposition that
cost of restoration can be recovered under a question specific to loss of use. Although
both loss of use and cost of restoration are types of damages resulting from a temporary
injury to property, the jury in this case was not instructed concerning temporary injury to
property in general. The question was limited to loss of use of the property; the jury was
never instructed or asked to award damages for cost of restoration. Damages attributable
to one category of damages cannot be awarded under a different category.


 Thus, the
cost to restore the railroad tract to its prior condition cannot be considered in determining
whether there is sufficient evidence of the loss of use damages.
          While there may be evidence of additional loss of use damages not included in the
$2,000.00 testified to by William and the $1,000.00 testified to by Thomas, the Justisses
and the Alspaughs have not directed us to where any values were assigned to these
additional damages. Without any evidence concerning the value of these additional
damages, the trial court's award of $10,000.00 to the Justisses and to the Alspaughs,
respectively, is so contrary to the great weight and preponderance of the evidence as to
be manifestly unjust and clearly wrong. The cost of restoration of the property cannot be
awarded on a question specific to loss of use. The evidence is factually insufficient. 
          Evidence Sufficient Concerning Damages to Adjacent Property
          Kinder Morgan challenges the jury's award of $60,000.00 to the Justisses and
$50,000.00 to the Alspaughs for damages to their respective property, other than the
railroad tract. These damages were based on the loss of the levee (for the Justisses), loss
of wooded area for their cattle to take shelter and calve, and other losses affecting the
value of the Justisses' and the Alspaughs' adjoining properties. 
          William testified the levee was extremely important to his property to prevent
flooding. Thus, the loss of the levee substantially affected the value of his property. Both
William and Thomas testified trees were important to cattle operations because the cattle
needed the shelter the trees provided. They further testified the loss of trees would reduce
the value of their ranches. Thomas testified the railroad tract was the only wooded area
on his property. William testified the pipeline reduced the value of 300 acres of his
remaining property by $200.00 per acre. Thus, the award of $60,000.00 to the Justisses
is supported by the evidence. Thomas testified the value of his remaining property was
reduced by $250.00 per acre. Since his remaining property consisted of 200 acres, the
evidence supported an award of $50,000.00 to the Alspaughs. There is more than a
scintilla of evidence to support the jury's awards.


 
          Kinder Morgan contends that, based on Murphy's testimony, the awards should be
reduced to $3,053.00 for the Justisses and $735.00 for the Alspaughs. Murphy testified
the pipeline would have no affect on the value of the surrounding area. Kinder Morgan
relies on Murphy's testimony that the Alspaughs were entitled to $735.00 for reseeding the
Alspaughs' easement area. Murphy also testified the Justisses were entitled to $3,053.00
for the loss of the hay lot and for reseeding. The jury was entitled to resolve the conflicting
testimony in favor of the Justisses and the Alspaughs. The jury's award is not so against
the great weight and preponderance of the evidence that it is clearly wrong or manifestly
unjust.
Exemplary Damages 
          Kinder Morgan contends the trial court erred in awarding exemplary damages
because the Justisses and the Alspaughs failed to present clear and convincing evidence
that Kinder Morgan acted with malice.


 Exemplary damages may only be awarded on
proof by clear and convincing evidence of fraud, malice, or a "wilful act or omission or
gross neglect in wrongful death actions . . . ." See Act of Apr. 11, 1995, 74th Leg., R.S.,
ch. 19, 1995 Tex. Gen. Laws 108, 110 (amended 2003) (current version at Tex. Civ. Prac.
& Rem. Code Ann. § 41.003 (Vernon Supp. 2006)). According to Kinder Morgan, the
evidence is legally insufficient


 for a rational juror to have formed a firm belief that Kinder
Morgan acted with malice. We agree.
          Malice differs from ordinary negligence because it requires extreme risk and a
conscious indifference to that risk. See Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 21 (Tex.
1994). Former Section 41.001(7) of the Texas Civil Practice and Remedies Code, which
dealt with exemplary damages, defined malice as:
an act or omission . . . which when viewed objectively from the standpoint of
the actor at the time of its occurrence involves an extreme degree of risk,
considering the probability and magnitude of the potential harm to others;
and . . . of which the actor has actual, subjective awareness of the risk
involved, but nevertheless proceeds with conscious indifference to the rights,
safety, or welfare of others.
 
Act of Apr. 11, 1995, 74th Leg., R.S., ch. 19, 1995 Tex. Gen. Laws 108, 109 (amended
2003) (current version at Tex. Civ. Prac. & Rem. Code Ann. § 41.001 (Vernon Supp.
2006)).


 Malice requires that the defendant's conduct involved an objective extreme risk
of harm and that the defendant had a subjective "actual awareness" of an extreme risk
created by the conduct. Brown & Root, Inc. v. Moore, 92 S.W.3d 848, 850–51 (Tex.
App.—Texarkana 2002, pet. denied). An objective extreme degree of risk is a risk "which
is not a remote possibility of injury or even a probability of minor harm, but rather the
likelihood of serious injury to the plaintiff." Id. at 851; Dillard Dep't Stores, Inc. v. Silva, 148
S.W.3d 370, 374 (Tex. 2004). A subjective "actual awareness" requires evidence that the
defendant knew about the peril, but its acts or omissions demonstrated it did not care. 
Moore, 92 S.W.3d at 851. Circumstantial evidence may be sufficient to prove either prong
of malice. Id. 
          The "extreme degree of risk" prong of malice, sufficient to support exemplary
damages, is a function of the magnitude of injury and the probability of injury. KPH
Consolidation, Inc. v. Romero, 102 S.W.3d 135, 144 (Tex. App.—Houston [14th Dist.]
2003), aff'd, 166 S.W.3d 212 (Tex. 2005); Columbia Med. Ctr. of Las Colinas, Inc. v.
Hogue, 132 S.W.3d 671, 681–82 (Tex. App.—Dallas 2004, pet. granted). The harm to be
anticipated from the conduct must be extraordinary harm such as "death, grievous physical
injury, or financial ruin." Celanese Ltd. v. Chem. Waste Mgmt., Inc., 75 S.W.3d 593, 600
(Tex. App.—Texarkana 2002, pet. denied); see Moriel, 879 S.W.2d at 24.
          When considering a legal sufficiency challenge, we review all the evidence in the
light most favorable to the jury's finding, taking into account contrary undisputed facts, to
determine whether reasonable jurors could have formed a firm belief or conviction
regarding malice. Sw. Bell Tel. Co. v. Garza, 164 S.W.3d 607, 618 n.15 (Tex. 2004); see
Qwest Int'l Commc'n, 167 S.W.3d at 326. "To give appropriate deference to the fact-finder's conclusions and the role of a court conducting a legal sufficiency review, looking
at the evidence in the light most favorable to the judgment means that a reviewing court
must assume that the fact-finder resolved disputed facts in favor of its finding if a
reasonable fact-finder could do so." Garza, 164 S.W.3d at 627. A court should disregard
all evidence that a reasonable fact-finder could have disbelieved or found to have been
incredible. Id.
          The Justisses and the Alspaughs contend malice can be implied from the
circumstances of this case.


 Malice may be implied from the knowing conversion of
another's property when the defendant knew or should have known it had no legal right to
the property. First Nat'l Bank of McAllen v. Brown, 644 S.W.2d 808, 810 (Tex.
App.—Corpus Christi 1982, writ ref'd n.r.e.). However, there is no clear and convincing
evidence that the alleged conversion here was knowing. At best, the evidence establishes
that Kinder Morgan knew there was a dispute concerning who owned the property. Under
the evidence presented in this case, malice cannot be implied.
          In the alternative, the Justisses and the Alspaughs contend a rational juror could
have formed a firm belief that Kinder Morgan acted with malice. According to the Justisses
and the Alspaughs, the damages they sustained, the fact that Kinder Morgan knew they
were claiming the railroad tract, and the fact that Kinder Morgan only obtained a deed
without warranty are sufficient to prove there was an extreme risk of serious injury. 
Further, the Justisses and the Alspaughs allege Kinder Morgan's rejection of an alternative
route for its pipeline, and its failure to investigate the Justisses' and Alspaughs' claims,
constitute sufficient evidence Kinder Morgan was subjectively aware of the extreme risk
and acted with conscious indifference. 
          While constructing the pipeline, Kinder Morgan destroyed numerous trees, which
caused the loss of several calves, and destroyed a levee which protected the Justisses'
property from flooding. William testified he lost over 600 trees as a result of Kinder
Morgan's actions. Many of these trees were not on the railroad tract.
          William explained that the levee maintained by the railroad—and subsequently
maintained by him—for over twenty-five years was necessary to keep over 300 acres of
his remaining land from flooding. Thomas testified that Kinder Morgan destroyed
approximately 300 trees on the portion of the railroad tract he had adversely possessed. 
Thomas further testified the railroad tract was the only wooded area on his land where his
cattle could take shelter, and testified several calves died due to the loss of the wooded
area. 
          The Justisses argue there is a substantial likelihood of encroachments when
property that has not been used for decades is purchased by a deed without warranty. As
evidenced by literature from the construction of another pipeline project, Kinder Morgan
knew there was a risk of adverse possession claims when constructing property on land
that had not been used in decades. Harry Gollier, a corporate representative of Kinder
Morgan, testified that Kinder Morgan was aware Union Pacific was not warranting against
any adverse possession claims.
          In addition, the Justisses and the Alspaughs contend this case presents similar facts
to the Corpus Christi Court of Appeals' decision in Houston Lighting & Power Co. v. Sue,
644 S.W.2d 835 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e.). In Sue, the Corpus
Christi court affirmed a jury's conclusion that HL&P acted with malice. Id. While
constructing a cooling pond for a nearby power plant, HL&P constructed a temporary road
through an adjoining tract of land. Id. Although HL&P had begun negotiations to purchase
an easement across the property, there was evidence that, at the time construction began,
HL&P knew it had no rights to the property. Id. During HL&P's use of the property, cattle
belonging to the lessee of the property escaped from the property. Id. Holding that the jury
was entitled to conclude HL&P used the land without permission and with conscious
indifference to the lessee's cattle operation, the court affirmed the jury's finding of malice. 
Id. 
          We believe Sue is distinguishable from the facts of this case. In Sue, the court held
that the jury was entitled to conclude HL&P knew it had no rights to the property in
question. Id. at 841. Unlike Sue, the evidence in this case establishes, at most, that
Kinder Morgan knew there was a dispute over the ownership of the property. In addition,
the Texas Supreme Court has adopted, since the decision in Sue, a heightened standard
of review for exemplary damages. See Garza, 164 S.W.3d at 618 n.12.
          The Justisses and the Alspaughs presented no clear and convincing evidence that
any of these actions created an extreme risk of extraordinary harm. Although the evidence
supports a conclusion there was some risk of injury to the Justisses and the Alspaughs,
there is not clear and convincing evidence of an extreme risk. Exemplary damages are
available for the purpose of punishing a defendant for outrageous, malicious, or otherwise
morally culpable conduct. Ellis County State Bank v. Keever, 936 S.W.2d 683 (Tex.
App.—Dallas 1996, no writ). The mere fact there was a risk of the occurrence of some
injury is not clear and convincing evidence there was an extreme risk of extraordinary
harm. Even when viewed in a light most favorable to the jury's verdict, the evidence is
insufficient for a rational juror to form a firm belief there was an extreme risk of
extraordinary harm. Because there is insufficient evidence of an extreme risk, we decline
to decide whether the evidence that Kinder Morgan acted with conscious indifference to
the extreme risk is sufficient.


 The evidence is legally insufficient to support the jury's
award of exemplary damages.
Conclusion
          The recitals contained in a deed of trust relating to the Justisses' adjoining property
is not an acknowledgment, as a matter of law, of title in another. We reject Kinder
Morgan's argument that the evidence of adverse possession is legally insufficient. Further,
the evidence of adverse possession is factually sufficient, even if Kinder Morgan had
preserved error. The evidence is legally and factually sufficient for the damages relating
to the condemnation and the damages to adjoining property. However, the evidence
concerning the jury's award for loss of use damages is factually insufficient, and the
evidence supporting exemplary damages is legally insufficient. 
          Therefore, conditioned on the Justisses filing, within fifteen days from the date of
our opinion, a remittitur of $8,000.00 from the damages awarded by the trial court, we
modify the trial court's judgment to reflect an award to them, supported by the testimony
of William Justiss, of $2,000.00 in damages for loss of use. Further, conditioned on the
Alspaughs filing, within fifteen days from the date of our opinion, a remittitur of $9,000.00
from the damages awarded by the trial court, we modify the trial court's judgment to reflect
an award to them, supported by the testimony of Thomas Alspaugh, of $1,000.00 in
damages for loss of use.
          Because the evidence is legally insufficient to support the award of exemplary
damages to either the Justisses or to the Alspaughs, we modify the trial court's judgment
to delete such damages.   If the above remittiturs are not filed, the judgment is reversed
and the cause remanded for a new trial. Otherwise, the judgment, as modified, is affirmed.



                                                                Donald R. Ross
                                                                Justice
 
Date Submitted:      August 10, 2006
Date Decided:         September 5, 2006